769 A.2d 1108 (2001)
338 N.J. Super. 486
STATE of New Jersey, Plaintiff-Respondent,
v.
Francesco SANSOTTA, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued September 12, 2000.
Decided March 30, 2001.
*1109 Alison Perrone, Assistant Deputy Public Defender, argued the cause for appellant (Ivelisse Torres, Public Defender, attorney; Ms. Perrone, of counsel and on the brief).
Marc Lemieux, Assistant Monmouth County Prosecutor, argued the cause for respondent (John Kaye, Monmouth County Prosecutor, attorney; Mr. Lemieux, of counsel; Linda Estremera, Assistant Prosecutor, on the brief).
Before Judges STERN, COLLESTER and FALL.
The opinion of the court was delivered by COLLESTER, J.A.D.
Pursuant to leave granted, the State appeals from a December 3, 1999, order suppressing evidence of test results of a liquid in a water bottle seized from defendant without a warrant and found to contain Gamma Hydroxybufyrate (GHB), a prohibited substance. We affirm.
Defendant was indicted for third degree possession of GHB, contrary to the provisions of N.J.S.A. 2C:35-10.2 (count one); second degree possession of GHB with the intent to distribute, contrary to the provisions of N.J.S.A. 2C:35-5.2 (count two); second degree distribution of GHB, contrary to the provisions of N.J.S.A. 2C:35-5.2 (count three); and fourth degree reckless endangerment to another person, contrary to the provisions of N.J.S.A. 2C:12-2b(2) (count four). He entered a plea of not guilty and filed a motion to suppress which was subsequently granted.
The sole witness at the suppression hearing was Sea Bright Patrolman Richard Jacobs, who testified that he was dispatched to the Tradewinds Night Club at about 11:30 p.m. on March 11, 1999, in response to a first aid call. On arrival he was directed to the ladies room where he saw an obviously sick young woman vomiting in a toilet. While others attended to the sick woman, Jacobs cleared the crowd away from the door so that the first aid squad could bring a stretcher into the room. He heard unidentified persons in the crowd mention GHB, which Jacobs knew was a banned "date rape" substance that was colorless, soluble in water and could cause a person to vomit, pass out or become comatose. After the woman was taken to the hospital by ambulance, Jacobs returned to his normal duties. He received no additional information that night *1110 as to the woman's condition or the cause of her distress.
Half an hour later Jacobs was again dispatched to the Tradewinds on a report of a man causing a disturbance in the parking lot. When Jacobs arrived, he saw a man later identified as defendant leaning against a railing. He remembered him as one of the people standing outside the ladies room earlier. Defendant was wearing jeans, an untucked flannel shirt and a leather jacket. Jacobs shook him awake and requested identification. Defendant fumbled through his clothing and produced a driver's license. His speech was slurred, his pupil dilated, and he appeared on the verge of passing out again.
Jacobs told defendant that he had to leave the Tradewinds property and asked if he had a ride home. Defendant said that he would walk to a 7-11 convenience store about a half-mile away and call a cab. Because he was concerned that defendant might fall and injure himself or stagger into the roadway and be struck by a car, Jacobs offered to drive defendant to a place to make the call. Defendant accepted.
There followed a brief conversation when Jacobs told defendant that he had seen him earlier and asked if the sick woman was his girlfriend. Defendant said he had met her that night for the first time and did not know why she became ill. He added that he had given her a sip of a sports drink call "Rejuvenate" which he had purchased from Gold's Gym.
As defendant was getting into the police car, Jacobs noticed a bulge underneath his shirt at the waistband. He patted down the defendant and felt "a hard object" which he thought could be a weapon. He reached under defendant's shirt and pulled out a clear "Aquafina" water bottle about eight inches long and two and a half inches in diameter. The bottle was half full with a clear liquid. Handwritten on the side were the words, "Do Not Throw Away."
Jacobs seized the water bottle because he thought that it might have some connection to the sick woman he had seen earlier. He drove defendant to the Sea Bright police headquarters to call a cab. On arrival defendant asked for the return of the water bottle. Jacobs refused and told defendant that the bottle was to be sent to the State Police laboratory for analysis of its contents. Defendant was told he could leave and call a cab. He was not arrested, and no application was made for a search warrant of the contents of the water bottle.
The following afternoon the Aquafina bottle was taken to the State toxicology lab. Several days later it was confirmed that the liquid was positive for GHB. Defendant was then arrested and charged with possession of a controlled dangerous substance with the intent to distribute.
A warrantless search is prima facie invalid and must fall within constitutionally accepted exceptions to the warrant requirement to be upheld. Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). The State bears the burden of showing that an established exception applies. State v. Hill, 115 N.J. 169, 173-74, 557 A.2d 322 (1989). The contention sub judice is that the water bottle was properly seized and analyzed as a result of the "plain view" exception. Texas v. Brown, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983); State v. Bruzzese, 94 N.J. 210, 236-38, 463 A.2d 320 (1983), cert. denied, 465 U.S. 1030, 104 S.Ct. 1295, 79 L.Ed.2d 695 (1984). The State argues that what Patrolman Jacobs heard and saw that evening gave him the requisite probable cause to believe that the liquid in the bottle contained a date rape drug.
*1111 "Probable cause" is a constitutional concept difficult of denotation. It has been phrased as a "reasonable or well-grounded suspicion," see, Ornelas v. United States, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996), or a "fair probability that contraband or evidence will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 548 (1983); State v. Novembrino, 105 N.J. 95, 117-18, 519 A.2d 820 (1987); State v. Waltz, 61 N.J. 83, 293 A.2d 167 (1972). Because it is to be interpreted by law enforcement personnel, "probable cause" is a practical concept that defers to the experience of a police officer, State v. Davis, 104 N.J. 490, 517 A.2d 859 (1986), but cannot be based upon a mere hunch. State v. Reldan, 100 N.J. 187, 202, 495 A.2d 76 (1985). The State must show the existence of objective and articulable factors which lead the police officer to conclude that there was probable cause that evidence or contraband is present in a particular place.
If a finding of probable cause that its contents were criminal is to be sustained, then, it must be shown ... that the officer's conclusion, when viewed in light of his special training or experience would persuade the average reasonably prudent person that such a finding was justified.
[State v. Demeter, 124 N.J. 374, 386, 590 A.2d 1179 (1991).]
We conclude that the State did not meet its burden of establishing the requisite probable cause for the warrantless search and seizure of the plastic water bottle after its removal from defendant's waistband. While Patrolman Jacobs may have suspected that the woman was ill because she had been drugged with GHB based on the comments of undisclosed persons outside the ladies room and from his own general knowledge of the drug in question, no objective factors validated his suspicions at that time or even later that night.
After defendant admitted contact with S.K. in the Tradewinds and giving her a sip of a sports drink, Jacobs' suspicions were undoubtedly torqued. When he uncovered the Aquafina bottle on defendant's person, Jacobs then made a leopard's leap to conclude that it contained evidence of a date rape drug. However, nothing about the contents announced a prohibited substance. Patrolman Jacobs saw only water in a water bottle.
Nor was there anything overtly nefarious about the container, which was a common plastic bottle of a popular brand of still water. The handwritten phrase "Do Not Throw Away" on its side did not constitute probable cause to escalate this innocent appearing object to a container of contraband or evidence of a crime.
In Demeter the State sought to uphold the search of a 35 millimeter film cannister found on the front console of a lawfully stopped automobile. Noting the "intrinsically innocent" nature of the film container, the Supreme Court found the results of the search were held properly suppressed. We see no viable distinction in this case. Unlike, for example, plastic bags of white powder or vegetation, there was nothing about the appearance of the container or its contents to give such distinctive character as to constitute probable cause to even a trained investigative eye. See, United States v. Jacobsen, 466 U.S. 109, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984).
Patrolman Jacobs had a hunch, a correct one as it turned out, but there was a paucity of objective factors to equate that hunch to probable cause that the water bottle was associated with criminal activity.
Affirmed.