NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0866-13T2

STATE OF NEW JERSEY,

      Plaintiff-Appellant,

  v.

WILLIAM L. WITT,

      Defendant-Respondent.

_____

| APPROVED FOR PUBLICATION |
| --- |
| May 21, 2014 |
| APPELLATE DIVISION |

Argued May 6, 2014 — Decided May  21, 2014

Before Judges Fisher, Koblitz and O'Connor.

On appeal of an interlocutory order of the
Superior Court of New Jersey, Law Division,
Salem County, Indictment No. 13-04-0215.

Ronald Susswein, Assistant Attorney General,
argued the cause for appellant (John J.
Hoffman, Acting Attorney General, attorney;
Mr. Susswein, of counsel and on the brief).

Stephen W. Kirsch, Assistant Deputy Public
Defender, argued the cause for respondent
(Joseph E. Krakora, Public Defender,
attorney; Mr. Kirsch, of counsel and on the
brief).

The opinion of the court was delivered by

FISHER, P.J.A.D.

By way of this appeal of an interlocutory order, which

granted defendant's motion to suppress evidence seized during a

warrantless search of his motor vehicle, the Attorney General

seeks to have "overturn[ed] the rule of law announced in State v. Pena-Flores, 198 N.J. 6 (2009)." The Attorney General, however, candidly acknowledges what is undeniably true — this court "does not have the authority to overturn" Pena-Flores. Consequently, the Attorney General seems to simply seek our predictable disposition on the merits so he may take his fight to the Supreme Court. We granted leave to appeal not because we believed there is merit in this appeal but because it is our general practice to grant the State's motions for leave to appeal the suppression of evidence. See State v. Reldan, 100 N.J. 187, 204-05 (1985); State v. Ruffin, 371 N.J. Super. 371, 389 (App. Div. 2004); State v. Alfano, 305 N.J. Super. 178, 190 (App. Div. 1997). We now affirm because we are bound by Pena-Flores, because of the utter absence of any exigency to support the warrantless vehicle search that occurred, and because there was no justification for this motor vehicle stop.

Following defendant's arrest at a motor vehicle stop, which we will describe momentarily, a warrantless search led to the discovery and seizure of a handgun from the center console of defendant's vehicle. After being indicted and charged with unlawful possession of a firearm, N.J.S.A. 2C:39-5(b), and unlawful possession of a firearm by a convicted felon, N.J.S.A.

2C:39-7(b), defendant moved for the suppression of the evidence seized during the warrantless vehicle search.

The suppression hearing was stunningly brief. Only the arresting officer testified, and his testimony consumes a mere eight transcript pages. During the course of that testimony the prosecutor made little attempt to elicit evidence — to the extent any existed — of exigent circumstances necessitating the warrantless search.

The arresting officer testified that he was on patrol on December 19, 2012. He had just concluded his involvement with another motor vehicle stop when, at approximately 2:00 a.m., a vehicle drove by with his "high beams on" that the driver "failed to dim" as he drove by. The officer pursued and stopped defendant's vehicle on Route 48 in Carneys Point. As he questioned defendant, the officer formed the conclusion that defendant was intoxicated.

Defendant's credentials were readily provided. Defendant also complied with the officer's request that he step out of the vehicle and engage in a field sobriety test, which the officer believed defendant failed. The officer arrested defendant, read him his Miranda[1] rights, and handcuffed and seated defendant in

_____

[1] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

the back of the officer's patrol vehicle. The officer had called for back-up during the field sobriety test, and another police vehicle had promptly arrived. The officer also testified there were no other occupants in defendant's vehicle and there was "[n]ot a lot of traffic out there" at that early morning hour.

After hearing argument on the significance of this testimony, Judge Timothy G. Farrell granted defendant's motion to suppress. The State then moved for leave to appeal, which we granted.

In appealing what it believes to be the appropriate case for its quixotic attempt to obtain a change in the currently applicable legal principles,[2] the State argues in a single point:[3]

> THE CURRENT EXIGENT-CIRCUMSTANCES TEST UNDER NEW JERSEY'S INTERPRETATION OF THE AUTOMOBILE EXCEPTION TO THE WARRANT REQUIREMENT, AS EXPLAINED IN STATE V. PENA-FLORES, SHOULD BE REPLACED BECAUSE IT HAS PROVED TO BE UNWORKABLE AND HAS LED TO UNINTENDED NEGATIVE CONSEQUENCES.

---

[2]Because the Pena-Flores majority observed that it was merely reaffirming "over three decades of jurisprudence," id. at 29 n.6, we assume the Attorney General will also be seeking the Supreme Court's overruling of numerous other precedents.

[3]We have deleted the subparts of this point for brevity's sake.

Because this court has no authority to "replace" <u>Pena-Flores</u> with some other legal principles — only our Supreme Court may do that, <u>Franco v. Davis</u>, 51 <u>N.J.</u> 237, 238 (1968) — we find the Attorney General's arguments unworthy of our further discussion in a written opinion. <u>R.</u> 2:11-3(e)(2). Notwithstanding, and for the sake of completeness, we add the following brief comments regarding this particular case, the application of the automobile exception to the warrant requirement, and the faulty basis for this particular motor vehicle stop.

In reviewing its long line of decisions over many decades regarding automobile searches, the Supreme Court in <u>Pena-Flores</u> reiterated that a warrantless search of an automobile in New Jersey is permissible "where (1) the stop is unexpected; (2) the police have probable cause to believe that the vehicle contains contraband or evidence of a crime; and (3) exigent circumstances exist under which it is impracticable to obtain a warrant." 198 <u>N.J.</u> at 28 (citing <u>State v. Cooke</u>, 163 <u>N.J.</u> 657, 667-68 (2000) and <u>State v. Alston</u>, 88 <u>N.J.</u> 211, 230-34 (1981)). The Court further repeated that "[e]xigency must be determined on a case-by-case basis," 198 <u>N.J.</u> at 28 (citing <u>State v. Dunlap</u>, 185 <u>N.J.</u> 523, 551 (2006)), based on "the totality of the circumstances," <u>ibid.</u> (citing <u>Cooke</u>, 163 <u>N.J.</u> at 675). And the Court observed that the "[l]egitimate considerations" in examining such a

search "are as varied as the possible scenarios surrounding an automobile stop," including:

> the time of day; the location of the stop; the nature of the neighborhood; the unfolding of the events establishing probable cause; the ratio of officers to suspects; the existence of confederates who know the location of the car and could remove it or its contents; whether the arrest was observed by passersby who could tamper with the car or its contents; whether it would be safe to leave the car unguarded and, if not, whether the delay that would be caused by obtaining a warrant would place the officers or the evidence at risk.

> [Id. at 29.]

None of the circumstances presented here suggested anything close to an exigency that would permit a motor vehicle search without a warrant. This was an early morning stop on a deserted highway. Defendant was alone. We assume defendant had no confederates hiding in the brush alongside the roadway. Defendant had been handcuffed and was seated in the back of a police vehicle. There is no reason to believe that evidence the officer may have been looking for — he testified he was searching for open containers of alcohol[4] — would not still be there once a warrant was obtained. And the officer was not

---

[4]We assume — although we concede the record does not address the point — that any alcohol in a container in the vehicle would not change its chemical composition during the time it would take for the officer to apply for and obtain a search warrant, whether by telephone or otherwise.

"outnumbered." When the prosecutor argued the existence of "a manpower issue," Judge Farrell correctly pointed out the lack of evidence to support that contention.

Although the lack of exigencies alone would suffice in affirming the order under review, defendant additionally argues that not only was the seizure inappropriate but the stop of the vehicle was infirm as well. Here, the reason given for the stop was the fact that defendant drove by the officer, during the officer's participation in another motor vehicle stop, without dimming his high beams. The factual record on this point is scant and, indeed, the State made little effort to demonstrate the vehicle stop was proper, focusing only on the propriety of the seizure of evidence that followed. Nevertheless, we discern from the record that the officer who decided to make the stop was not operating his own vehicle when defendant drove by. And, although the record does not identify the side of the roadway where the officer's other motor vehicle stop occurred when defendant drove by, we have no cause at present to question the Attorney General's representation at oral argument that the officer was on the opposite side of the road from defendant's vehicle. Consequently the police officer's vehicle cannot

A-0866-13T2

possibly fit the definition of "an oncoming vehicle" contained in N.J.S.A. 39:3-60.[5]

It has been established that "a police officer is justified in stopping a motor vehicle when he has an articulable and reasonable suspicion that the driver has committed a motor vehicle offense." State v. Locurto, 157 N.J. 463, 470 (1999) (internal quotation marks and citations omitted); see also Delaware v. Prouse, 440 U.S. 648, 663, 99 S. Ct. 1391, 1401, 59 L. Ed. 2d 660, 673 (1979). Here, the State argues that this standard was met because defendant was driving with his high beams on. That fact alone is insufficient. The applicable statute that the officer presumably believed had been violated does not preclude all uses of a vehicle's high beams. To the contrary, the statute states:

> Every person driving a motor vehicle equipped with multiple-beam road lighting equipment, during the times when lighted lamps are required, shall use a distribution of light, or composite beam, directed high enough and of sufficient intensity to reveal persons and vehicles at a safe distance in advance of the vehicle, subject to the following requirements and limitations: whenever the driver of a vehicle approaches an oncoming vehicle within five hundred feet, such driver shall use a distribution

---

[5]There was no evidence that there was some other "oncoming vehicle" on the roadway when the officer decided to stop defendant's vehicle because of a perceived violation of N.J.S.A. 39:3-60.

of light or composite beam so aimed that the glaring rays are not projected into the eyes of the oncoming driver, and in no case shall the high-intensity portion which is projected to the left of the prolongation of the extreme left side of the vehicle be aimed higher than the center of the lamp from which it comes at a distance of twenty-five feet ahead, and in no case higher than a level of forty-two inches above the level upon which the vehicle standards at a distance of seventy-five feet ahead.

[N.J.S.A. 39:3-60 (emphasis added).]

The right to stop a motor vehicle requires evidence that the officer had a reasonable and articulable suspicion of a violation of the statute. This standard does not require that the officer possessed evidence of a violation beyond a reasonable doubt, only that the officer had an objectively reasonable belief that a motor vehicle violation had occurred. State v. Williamson, 138 N.J. 302, 305-06 (1994); State v. Puzio, 379 N.J. Super. 378, 382-84 (App. Div. 2005). That standard was not met here.

As worded, N.J.S.A. 39:3-60 presupposes that the offending driver's high beams are on when his vehicle "approaches an oncoming vehicle." Because, as noted, it has not been argued there was some other "oncoming vehicle" on the roadway at the time, we assume the officer's reason for stopping defendant's vehicle was based on the officer's belief that the officer's vehicle was the "oncoming vehicle" confronted by defendant's

undimmed high beams.  The plain language of the statute, however, requires that the other vehicle be in operation and in the lane of traffic opposite to the alleged offender;[6] the object of the statute is to avoid the operation of the high beams of one vehicle causing difficulties for the driver of another vehicle approaching in an opposite direction.[7]  Accordingly, it was not objectively reasonable for the officer to believe that defendant was in violation of N.J.S.A. 39:3-60 when he drove by, with his high beams on, the police officer's stationary and unoperated vehicle on the opposite side of the roadway; it is not reasonable for the Attorney General to assert or argue that

---

[6]We need not decide whether a driver is required to dim his high beams when approaching a vehicle — traveling in the same direction — from behind, although the Legislature's use of the word "oncoming" would suggest such a circumstance would not be violative of N.J.S.A. 39:3-60.  Cf., Maini v. Hassler, 38 N.J. Super. 81, 84 (App. Div. 1955) (finding that part of the statute that requires the dimming of high beams for oncoming vehicles within 500 feet irrelevant where defendant's vehicle struck plaintiff, who was walking on the roadway in the same direction).

[7]This is not to suggest that the vehicle other than that driven by the alleged offender must be in motion.  The statute would still be offended if, for example, the "oncoming vehicle" was stopped at an intersection because of a street light, stop sign or otherwise, and the offending driver were to approach within 500 feet of the intersection with his high beams on.  We do not see, however, how a parked vehicle could be an "oncoming vehicle" because these descriptive words suggest a vehicle in operation even though those words do not insist that the oncoming vehicle be in motion.  Logic suggests that a driver need dim his high beams only for a vehicle being operated, whether in motion or standing still, in the opposite direction.

the police officer's parked and unoperated patrol vehicle was an "oncoming vehicle" within the statute's meaning.

There is no merit in the State's appeal.[8]

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

_____

[8]We also find the argument posed by the Attorney General that the officer's "community caretaker function" authorized this motor vehicle stop to be without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2). That is, only in the Attorney General's view — the officer testified to no such thing — defendant's use of his high beams at that time was "abnormal" and the officer was authorized to make the stop to question or counsel defendant regarding the use of his high beams. We do not share the belief that use of the high beams on a largely deserted highway in an unpopulated area is "abnormal." And such a holding — that what a police officer believes is "abnormal" constitutionally authorizes a stop or detention of a motorist otherwise operating his vehicle in a proper manner — would come dangerously close to suggesting that a police officer may stop an individual operating a motor vehicle at any time for any reason. We find that argument utterly foreign to well-established constitutional principles.

A-0866-13T2