**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2246-22

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

SHAWN M. FENIMORE,
a/k/a SHAWN FENIMORE,
and SHAWN MICHAEL
FENIMORE,

     Defendant-Appellant.

_____

Argued May 21, 2024 – Decided July 26, 2024

Before Judges Natali and Haas.

On appeal from the Superior Court of New Jersey, Law Division, Salem County, Indictment No. 21-08-0541.

Tamar Y. Lerer, Assistant Deputy Public Defender, argued the cause for appellant (Jennifer Nicole Sellitti, Public Defender, attorney; Tamar Y. Lerer, of counsel and on the briefs).

Sarah D. Brigham, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney

General, attorney; Sarah D. Brigham, of counsel and on the brief).

PER CURIAM

Following the denial of his motion to suppress, defendant Shawn Fenimore pled guilty to second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5b(1), and third-degree possession of a controlled dangerous substance, N.J.S.A. 2C:35-10a(1), and was sentenced consistent with his negotiated plea to a five-year custodial sentence with one year parole ineligibility on the weapon offense, concurrent to a three-year sentence on the controlled substance charge. He appeals from the decision denying his suppression application and raises the following issues for our consideration:

I. THE SEARCH OF DEFENDANT'S CAR WAS UNLAWFUL.

   A. The automobile exception does not allow for warrantless searches of vehicles that are located at the police station and whose drivers are already detained.

   B. There was no probable cause to suspect there would be contraband in the car.

   C. If there was probable cause, the circumstances that gave rise to it were not spontaneous and unforeseeable.

   D. The search of the car was illegal and the evidence must be suppressed.

2

We reject defendant's arguments and affirm.

I.

The events leading to defendant's indictments were described in detail at a February 4, 2022 suppression hearing at which Trooper Daniel Radetich of the New Jersey State Police testified.[1]  Trooper Radetich explained an individual came to the police and accused defendant of harassment, including an allegation he struck someone with his car while under the influence of drugs.  Sometime thereafter, Trooper Radetich called defendant and requested he come to the Woodstown State Police station to provide a statement with respect to the harassment allegation.  After the call, Trooper Radetich told other officers, "I think [defendant is] intoxicated, possibly," as his voice was "raspy" and he "slurr[ed] his words."

Defendant arrived at the station between one and two hours later.  From the station lobby, Trooper Radetich observed defendant pull into the station parking lot, exit the driver-side of a vehicle, and "stumble . . . almost into the station wall."  Trooper Radetich then brought defendant into an interview room,

---

[1]  Co-defendant Nicolas G. Luzzo also participated in the suppression hearing, but is not a party to this appeal.

A-2246-22

read him his Miranda[2] rights, and began speaking to him about the harassment complaint.[3]  The interview was not recorded.

In describing defendant's demeanor, Trooper Radetich testified, "[h]e was slouched in his chair.  His voice was slow and his voice was raspy.  His eyes were pinpoint."  Trooper Radetich also identified "a fresh track mark" on one of defendant's arms and a white substance on the side of his mouth, which Trooper Radetich recognized as signs of drug use.  Based on these observations, Trooper Radetich believed defendant was "possibly," at that time, under the influence of narcotics.  When Trooper Radetich asked defendant if he had "taken anything," defendant simply stated he was "just tired."

Trooper Radetich testified he "didn't feel confident with [defendant] leaving the station," and conducted a series of field sobriety tests, specifically the horizontal gaze nystagmus test, the walk-and-turn test, and the one-leg stand test.  Having failed the latter two tests, Trooper Radetich arrested defendant for driving while intoxicated (DWI), secured defendant to a holding cell bench, and informed him officers were going to conduct "a probable cause search of his

_____

[2]  Miranda v. Arizona, 384 U.S. 436 (1966).

[3]  Trooper Radetich testified defendant signed a Miranda card acknowledging and waiving his rights, but that card is not in the record before us.

vehicle for intoxicants." Trooper Radetich described defendant as "hysterical" after his arrest, leading Trooper Radetich to believe defendant "was afraid that there was something" in the car.

Trooper Radetich's body-worn camera footage of the search was played at the suppression hearing. While Trooper Radetich and four other troopers were removing co-defendant Luzzo from the passenger seat of the vehicle, Trooper Radetich stated, "[h]ere's the keys."[4] During the search of the vehicle, troopers located four wax folds of heroin and a needle in the center console and a gun loaded with seventeen rounds of ammunition wrapped in a towel in a plastic bag in the backseat, and Trooper Radetich stated, "[t]here's a gun in here. I knew it." The search also uncovered seven iPhones, four car keys for different makes of cars, bolt cutters, and a tool used to break windows.[5]

After the search, Trooper Radetich spoke to defendant in an interview room and re-read him his Miranda rights, which defendant waived. Trooper Radetich stated the second interview of defendant occurred about two hours after his initial arrival and was recorded on Trooper Radetich's body-worn camera.

---

[4] The record does not indicate from where Trooper Radetich obtained the keys to defendant's vehicle.

[5] Defendant does not challenge the scope of the troopers' search of the vehicle's interior.

Defendant claimed ownership of two bags of heroin in the center console, but denied ownership of the other items. Defendant also admitted he "used some" heroin several hours before coming to the police station.

As a result of the search, defendant was charged with: second-degree unlawful possession of a weapon, third-degree possession of a controlled dangerous substance, and fourth-degree possession of a prohibited device. Defendant was also charged in a separate indictment with an additional count of third-degree possession of a controlled dangerous substance, contrary to N.J.S.A. 2C:35-10(a)(1).

As noted, defendant moved to suppress the evidence discovered during the warrantless search of his vehicle. During the hearing, Trooper Radetich acknowledged on cross-examination when someone is arrested for driving while intoxicated, the vehicle will be impounded under John's Law,[6] and therefore

---

[6] N.J.S.A. 39:4-50.22 and - 50.23 generally require a vehicle be impounded for at least twelve hours when the driver is arrested for DWI or refuses to submit to a chemical breath test. Impoundment, however, "is not automatically required in all DWI cases" because "John's Law 'does not negate the [c]onstitutional right of the arrested person to make other arrangements for the removal of the vehicle by another person who is present at the scene of the arrest.'" State v. Courtney, 478 N.J. Super. 81, 95 n.4 (App. Div.), leave to appeal denied, 257 N.J. 413 (2024) (quoting Off. of the Att'y Gen., Law Enf't Directive No. 2004-1, Appendix B, Guidelines Mandatory 12-Hour Impoundment of Motor Vehicles (Feb. 20, 2004)).

defendant's car "wasn't going anywhere" for at least twelve hours. When asked

why he did not obtain a warrant prior to searching defendant's car, the following

colloquy occurred:

> [Trooper Radetich]: Because that's our stan -- every time we're doing (indiscernible), it's the same exact standard process. When you're arrested for John's Law, we have the right to a probable cause search of their vehicle and we search their vehicle for intoxicants.
>
> [Counsel]: Okay. That's when you're on the side of the road, isn't it?
>
> [Trooper Radetich]: No, it could happen in a Walmart parking lot. It could happen anywhere. The location does not change that.
>
> [Counsel]: What about the police barracks, does that change it?
>
> [Trooper Radetich]: No, it does not change that.

The court denied defendant's application to suppress in an oral decision

and subsequently issued a conforming order. The court recognized <u>State v. Witt</u>,

223 N.J. 409 (2015) was "certainly" the case to consider "in analyzing these

circumstances," and explained <u>Witt</u> requires "there be spontaneous and

unforeseen circumstances and probable cause before a [warrantless] search of a

motor vehicle can be made." The court rejected defendant's argument the

circumstances were not spontaneous and unforeseeable because defendant was

asked to come to police station and "[w]hen [defendant] arrived at the barracks, it became immediately apparent to the trooper that the defendant appeared to be under the influence. And that was spontaneous and unforeseeable; thus, bringing us to consider Witt as allowing the search to take place."

The court acknowledged "[m]ost of the case law concerns roadway stops," but concluded defendant's argument his vehicle's presence in a parking lot rendered a warrantless search under Witt improper lacked support. The court next addressed John's Law and police's obligation to impound defendant's car from a police parking lot and considered whether such circumstances "negat[ed] the ability to have a warrantless search," but stated it was "not aware of any case law that addresse[d] that issue."[7]

Ultimately, the court concluded "there was probable cause to believe the defendant operated the vehicle under the influence; that the police troopers were justified in searching the vehicle without a search warrant and thereby discovering the evidence that was contained." As noted, defendant pled guilty to second-degree unlawful possession of a weapon and third-degree possession

---

[7] The court's oral decision was issued prior to our decision in Courtney, 478 N.J. Super. at 81.

of a controlled substance, and was sentenced as previously noted.[8] This appeal followed.

## II.

Defendant argues the court erred in denying his motion to suppress because: (1) the automobile exception does not allow police to search a vehicle at a police station that is subject to impoundment; (2) the troopers lacked probable cause to search his vehicle; and (3) even if probable cause existed, the circumstances giving rise to such were not spontaneous and unforeseeable.

With respect to defendant's first argument, he contends the automobile exception, as detailed in <u>Witt</u>, does not apply because his vehicle was not on the roadway but rather in a police station parking lot subject to impoundment and he was detained. In support, he highlights a passage from <u>Witt</u> which states, "[g]oing forward, searches on the roadway based on probable cause arising from unforeseeable and spontaneous circumstances are permissible. However, when vehicles are towed and impounded, absent some exigency, a warrant must be secured." 223 N.J. at 450. Further, defendant argues <u>Witt</u> departs from federal jurisprudence and precludes police from conducting a warrantless search of a

---

[8] Defendant was also sentenced to concurrent sentences on two unrelated indictments that are not addressed in this appeal.

vehicle at "headquarters" merely because they could have done so on the roadside.

Defendant next contends, relying on State v. Jones, 326 N.J. Super. 234, 244-45 (App. Div. 1999), police did not have probable cause as they did not have a "well-grounded, fact-based suspicion that other drugs or evidence of drug use would be in the car."  Defendant argues the fact a driver was under the influence of a drug does not categorically give rise to probable cause to believe drugs or evidence of drug use are in the vehicle.

Additionally, defendant argues even if there was probable cause to search his vehicle, it did not develop spontaneously and unforeseeably, as required, but rather resulted from "a concerted and deliberate effort" by police.  Relying on State v. Smart, 253 N.J. 156, 171 (2023), defendant argues the court erred in concluding defendant being intoxicated was spontaneous and unforeseeable, and contends his arrival at the station was the first moment of a "multi-step effort" to gain access to his vehicle.

Defendant claims such steps included the observation of his arms, questions about his intoxication, and three separate field sobriety tests which then transformed police's expectations into probable cause.  Defendant acknowledges there "is nothing wrong with officers taking these steps to ripen

A-2246-22

their suspicion into probable cause," but argues once probable cause was "painstakingly developed," police were required to obtain a warrant before searching his vehicle.

For its part, the State maintains the court properly denied defendant's motion to suppress and contends police had probable cause to search defendant's vehicle, that such probable cause arose spontaneously and unforeseeably, and that Witt does not limit the automobile exception solely to roadside searches. The State acknowledges defendant's vehicle was subject to impoundment under John's Law, but relying on State v. Rodriguez, 459 N.J. Super. 13, 23 (App. Div. 2019), and Courtney, 478 N.J. Super. at 99, asserts when faced with such a situation, officers have the discretion to conduct an on-scene search of the vehicle, or seek a warrant after the vehicle is impounded. Additionally, for the first time on appeal, the State also contends the search was lawful as a search incident to arrest.

We disagree with all of defendant's arguments and conclude the court correctly determined police had probable cause to believe evidence of a crime was present in defendant's vehicle which arose spontaneously and unforeseeably, allowing police to conduct a warrantless on-scene search of defendant's vehicle.

11

## III.

Our review of a trial judge's decision on a motion to suppress is limited. State v. Robinson, 200 N.J. 1, 15 (2009). In reviewing such an application, we must uphold the judge's factual findings, "so long as those findings are supported by sufficient credible evidence in the record." State v. Rockford, 213 N.J. 424, 440 (2013) (quoting Robinson, 200 N.J. at 15). "Those findings warrant particular deference when they are 'substantially influenced by [the trial judge's] opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" Ibid. (alteration in original). We review de novo the judge's pure determinations of law, State v. Mann, 203 N.J. 328, 337 (2010), as well as the application of legal principles to factual findings, State v. Harris, 181 N.J. 391, 416 (2004).

"The Fourth Amendment of the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution, in almost identical language, protect against unreasonable searches and seizures." Smart, 253 N.J. at 164 (quoting State v. Nyema, 249 N.J. 509, 527 (2022)). Warrantless searches are presumptively invalid because they are contrary to the United States and the New Jersey Constitutions, State v. Pineiro, 181 N.J. 13, 19 (2009), and "[t]he

warrant requirement . . . may be dispensed with in only a few narrowly circumscribed exceptions," State v. Patino, 83 N.J. 1, 7 (1980).

"To justify a warrantless search or seizure, 'the State bears the burden of proving by a preponderance of the evidence that [the] warrantless search or seizure falls within one of the few well-delineated exceptions to the warrant requirement.'" State v. Vanderee, 476 N.J. Super. 214, 230 (App. Div. 2023) (quoting State v. Chisum, 236 N.J. 530, 546 (2019)). Each exception to the warrant requirement has its own essential elements that must be satisfied to justify a warrantless search. State v. Johnson, 476 N.J. Super. 1, 20 (App. Div. 2023).

To conduct a search under the automobile exception to the warrant requirement, the State must satisfy the test set forth in Witt, 223 N.J. at 446-48, which requires it "prove that probable cause to believe the vehicle contains contraband or other evidence of unlawful activity arose spontaneously and unforeseeably," Courtney, 478 N.J. Super. at 93 (citing Witt, 223 N.J. at 446-48), and did not exist "well in advance of the search," Smart, 253 N.J. at 174. This test represents a "a sharp departure from a more narrow construction of the automobile exception previously adopted." Rodriguez, 459 N.J. Super. at 21.

Central to the parties' arguments in this case is the precise language of our Supreme Court's decision in <u>Witt</u>, wherein the court identified three rationales for the automobile exception:

> (1) the inherent mobility of the vehicle, <u>Carroll v. United States</u>, 267 U.S. 132, 153 (1925);
>
> (2) the lesser expectation of privacy in an automobile compared to a home, <u>California v. Carney</u>, 471 U.S. 386, 391-93 (1985); and
>
> (3) the recognition that a Fourth Amendment intrusion occasioned by a prompt search based on probable cause is not necessarily greater than a prolonged detention of the vehicle and its occupants while the police secure a warrant, <u>Chambers v. Maroney</u>, 399 U.S. 42, 51-52, (1970).
>
> [<u>Witt</u>, 223 N.J. at 422-23.]

Notably, in <u>Witt</u>, Justice Albin, writing for the Court, detailed the history of the automobile exception under both federal and New Jersey law. <u>See Witt</u>, 223 N.J. at 422-40. In <u>Courtney</u>, discussing that history, we noted, "[i]t is sufficient for present purposes to note the New Jersey Supreme Court has charted its own course, relying on the principle that our State Constitution can provide greater protections against unreasonable searches and seizures than are afforded under the United States Constitution." 478 N.J. Super. at 92.

"In a nutshell, the divergence between the New Jersey and federal automobile exceptions focuses on whether and how law enforcement must prove exigent circumstances to excuse the warrant requirement." Ibid. Under federal law, probable cause alone is sufficient to satisfy the automobile exception. Witt, 223 N.J. at 422 (citing Maryland v. Dyson, 527 U.S. 465, 467 (1999)). In New Jersey, however, the automobile exception "has always accounted for case-specific exigency, not just 'inherent' exigency," but the method of determining such exigency has undergone significant change. Courtney, 478 N.J. Super. at 92.

In Witt, police conducted a motor vehicle stop after defendant failed to dim his high beams for an approaching vehicle. 223 N.J. at 416. Defendant appeared intoxicated, failed field sobriety tests, and was arrested for driving while intoxicated. Ibid. While searching defendant's vehicle for intoxicants, police found a gun in the center console. Ibid. The trial court found police lawfully stopped defendant's vehicle and had probable cause to search the vehicle for open containers of alcohol, but did not have "sufficient exigent circumstances" to carry out the warrantless search. Ibid. We affirmed the trial court's order suppressing the evidence, State v. Witt, 435 N.J. Super. 608, 610-11 (App. Div. 2014), and the Supreme Court granted the State's motion for leave

to appeal, State v. Witt, 219 N.J. 624 (2014). Notably, defendant's "sole argument" related to the exigent circumstances of the stop, and he did not challenge the trial court's finding of probable cause. Witt, 223 N.J. at 416.

The Witt Court rejected the multi-factor exigency test used in State v. Cooke, 163 N.J. 657 (2000) and State v. Pena-Flores, 198 N.J. 6 (2009), as "unsound in principle and unworkable in practice." 223 N.J. at 447. The Court replaced that exigency test "with a much simpler, more predictable test." Courtney, 478 N.J. Super. at 92-93. Specifically, the Court "resurrected the exigency test it developed decades earlier in State v. Alston, 88 N.J. 211 (1981)," which "requires the State to prove that probable cause to believe the vehicle contains contraband or other evidence of unlawful activity arose spontaneously and unforeseeably." Id. at 93; see Witt, 223 N.J. at 446-48.

The Court also imposed another "requirement," which we referred to as "the location requirement," which is based on the "inherent exigency associated with roadside stops." Courtney, 478 N.J. Super. at 94 (emphasis in original). Justice Albin explained:

> We also part from federal jurisprudence that allows a police officer to conduct a warrantless search at headquarters merely because he could have done so on the side of the road. See Chambers, [] 399 U.S. at 52. "Whatever inherent exigency justifies a warrantless search at the scene under the automobile exception

16

certainly cannot justify the failure to secure a warrant after towing and impounding the car" at headquarters when it is practicable to do so. Pena-Flores, [] 198 N.J. at 39 n.1 (Albin, J., dissenting). Warrantless searches should not be based on fake exigencies. Therefore, under Article I, Paragraph 7 of the New Jersey Constitution, we limit the automobile exception to on-scene warrantless searches.

[Witt, 223 N.J. at 448-49.]

The Court specifically stated, "searches on the roadway based on probable cause arising from unforeseeable and spontaneous circumstances are permissible," and also noted, "when vehicles are towed and impounded, absent some exigency, a warrant must be secured." Id. at 450.

The Witt Court further reasoned the return to the Alston standard "properly balances the individual's privacy and liberty interests and law enforcement's investigatory demands." 223 N.J. at 447. By way of example, the court stated, "if a police officer has probable cause to search a car and is looking for that car, then it is reasonable to expect the officer to secure a warrant if it is practicable to do so." Id. at 447-48. Such a requirement "eliminate[s] . . . the fear that 'a car parked in the home driveway of vacationing owners would be a fair target of a warrantless search if the police had probable cause to believe the vehicle contained drugs.'" Id. at 448 (quoting Cooke, 163 N.J. at 667-68).

A-2246-22

"In the case of the parked car, if the circumstances giving rise to probable cause were foreseeable and not spontaneous, the warrant requirement applies." Ibid.

In our recent published decision, Courtney, 478 N.J. Super. at 96-97, we reversed the trial court's order suppressing evidence discovered during a warrantless on-scene search of vehicle, and held the automobile exception, as defined in Witt, applies to on-scene searches, even if the vehicle will be impounded pursuant to John's Law, and the Supreme Court thereafter denied defendant's motion for leave to appeal, see Courtney, 257 N.J. 413.

We rejected defendant's argument that when a vehicle must be towed, as a matter of law, police cannot conduct a warrantless search as unsupported both by the plain language of Witt and "the reasons that prompted the Court to reform the automobile exception." Courtney, 478 N.J. Super. at 96. Further, we stated Witt explicitly referred to the requirement of police to obtain a warrant after a vehicle is towed and impounded and noted "Rodriguez correctly rejected the notion the Witt location rule applies to impoundments that will be effectuated in the future." Ibid. Accordingly, we succinctly concluded, when the State proves probable cause arose unforeseeably and spontaneously, "searches conducted on-scene are permitted; searches conducted off-scene are not." Id. at 99.

In Courtney, we also "reject[ed] the notion that authority to conduct an on-scene automobile-exception search depends on the reason why the vehicle will eventually be towed," and noted, "[t]he purpose of a John's Law impoundment is not to facilitate a police investigation or preserve evidence, but rather to prevent a drunk driver from regaining possession of the vehicle while still intoxicated." Id. at 96-97. We recognized John's law is not the only basis for impounding vehicles and "presume[d] there are countless occasions when impoundment is all but certain." Id. at 97. Accordingly, we concluded, "[i]f on-scene searches were categorically precluded when a vehicle is destined to be impounded, that rule might swallow the automobile exception." Ibid. We also determined the "likelihood" or "inevitability" of impoundment was not critical to a Witt analysis and stated, "[r]ather, the clearly-articulated test is whether the vehicle was actually removed from the scene of the stop before the search was executed." Ibid.

We also recognized the "reasons that undergird the location restriction" of the automobile exception, including the "inherent" exigencies of a traffic stop, such as the risk to officers, motorists, and to unsecured evidence, and noted such can "essentially [be] presumed," rather than "proved on a case-by-case basis." Id. at 97-98. Such exigencies "arise[] intrinsically during a traffic stop" and

19                                                                              A-2246-22

"only dissipate . . . once the vehicle is removed to a secure location," at which point any exigencies must be proved by the State. Id. at 98-99.

Against these principles, we conclude police lawfully searched defendant's vehicle without a warrant as the circumstances of this case fit into the well-delineated automobile exception described in Witt. Simply stated, we decline to interpret Witt in the manner defendant urges. We acknowledge Witt made several references to roadside stops, but, considering the decision in its entirety, we do not interpret such references to necessitate the narrow application of the automobile exception defendant suggests. Indeed, by dispensing with "unsound" and "unworkable" "multi-factor test to guide police officers in determining whether exigent circumstances excused the securing of a warrant," and replacing such with the Witt test, the Court expanded, rather than restricted, the automobile exception under New Jersey law. See Witt, 223 N.J. at 414-15; see also Rodriguez, 459 N.J. Super. at 21 (noting Witt "announced . . . a sharp departure from a more narrow construction of the automobile exception the Court had previously adopted").

Further, the precise language in Witt also belies defendant's argument, as Witt does not explicitly hold the automobile exception applies only to roadside stops. Indeed, if defendant's interpretation of Witt was correct, the Court's

20

decision would have overruled cases in which the automobile exception was applied to parked vehicles, see e.g., State v. Colvin, 123 N.J. 428 (1991) and State v. Paturzzio, 292 N.J. Super. 542 (App. Div. 1996), and we decline to conclude the Court would do so only implicitly.

Additionally, as noted, the Witt court expressly stated its holding "eliminate[s] . . . the fear that 'a car parked in the home driveway of vacationing owners would be a fair target of a warrantless search if the police had probable cause to believe the vehicle contained drugs,'" because "if the circumstances giving rise to probable cause were foreseeable and not spontaneous, the warrant requirement applies." 223 N.J. at 447-48. We interpret the clear import of such language to be if the circumstances giving rise to probable cause were unforeseeable and spontaneous, the parked car in the Court's hypothetical may be searched without a warrant.

We also disagree with defendant's argument the search was illegal because his vehicle was in a police parking lot and awaiting impoundment. As noted, in Courtney, we "decline[d] defendants' request to create a new bright-line rule making vehicles subject to John's Law categorically ineligible for an on-scene search under the automobile exception." 478 N.J. Super. at 88. Rather, we stated, "we read Witt to establish a simple binary test for determining where an

automobile-exception search can be executed: provided the State has proved probable cause arose spontaneously and unforeseeably, searches conducted on-scene are permitted; searches conducted off-scene are not." Id. at 99. Here, because police did not tow and impound the vehicle, but rather conducted an on-scene search, defendant's vehicle was mobile and although defendant was detained, defendant's passenger was not. As such, the exigencies inherent to on-scene searches, such as the mobility of the vehicle and destruction of evidence, were present. See Witt, 223 N.J. at 431-32, 448-49.

Further, our conclusion is consistent with New Jersey's "part from federal jurisprudence" precluding an officer from conducting "a warrantless search at headquarters merely because he could have done so on the side of the road." Witt, 223 N.J. at 448. Indeed, we are satisfied the reference to "headquarters" referred to a police impound lot, rather than the parking lot of a police station, as when a vehicle is towed and impounded, it is no longer mobile and the inherent exigencies supporting an on-scene search dissipate. See id. at 448-49.

Notably, here, troopers did not transport defendant's vehicle to the station, nor did they accompany or follow him. Further, police did not have custody and control of defendant's vehicle prior to the search, as is the case when a vehicle is impounded. As such, the exigencies inherent to an on-scene search had not

22

dissipated and search of defendant's vehicle in an unsecured parking lot prior to impoundment fell squarely within the parameters articulated in <u>Witt</u> and <u>Courtney</u>.

IV.

Defendant next argues the police did not have probable cause to search his vehicle as they did not have a "well-grounded, fact-based suspicion that other drugs or evidence of drug use would be in the car." Defendant asserts the fact police arrested a driver for driving under the influence does not give rise to probable cause to believe drugs or evidence of drug use are in the driver's vehicle. Again, we disagree.

Probable cause is "a well-grounded suspicion that a crime has been or is being committed." <u>Pineiro</u>, 181 N.J. at 21 (internal citations omitted). "It requires nothing more than 'a practical, common-sense decision whether, given all the circumstances . . . there is a fair probability'" that a crime has been committed. <u>State v. Dangerfield</u>, 171 N.J. 446, 456 (2002) (internal citations omitted). A totality of the circumstances standard applies to probable cause determinations because probable cause is a "fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even

A-2246-22

usefully, reduced to a neat set of legal rules." Schneider v. Simonini, 163 N.J. 336, 361 (2000) (quoting Illinois v. Gates, 462 U.S. 213, 232 (1983)).

"In assessing whether probable cause exists, 'courts must look to the totality of the circumstances and view those circumstances . . . from the standpoint of an objectively reasonable police officer.'" State v. Diaz, 470 N.J. Super. 495, 529 (App. Div. 2022) (quoting State v. Gibson, 218 N.J. 277, 293 (2014)). "[C]ourts are to give weight to 'the officer's knowledge and experience' as well as 'rational inferences that could be drawn from the facts objectively and reasonably viewed in light of the officer's expertise.'" State v. Citarella, 154 N.J. 272, 279 (1998) (quoting State v. Arthur, 149 N.J. 1, 10-11 (1997)). Probable cause, however, "cannot be based upon a mere hunch." State v. Sansotta, 338 N.J. Super. 486, 491 (App. Div. 2001).

In State v. Irelan, 375 N.J. Super. 100, 106, 119 (App. Div. 2005), officers conducted a traffic stop after observing defendant commit several traffic violations and the ensuing "roadside investigation provided probable cause that defendant was intoxicated." Specifically, based on the officers' observations during the stop and defendant's performance on sobriety tests, it became evident defendant "reasonably appeared intoxicated," was arrested for DWI. Id. at 119. We held a motorist's intoxicated appearance, together with his recent driving of

24

a vehicle, supported "a reasonable well-grounded suspicion that alcohol was consumed in the vehicle, and thus the vehicle contained open containers of alcohol," and determined the probable cause prong of the automobile exception met. Ibid.

In Jones, a state trooper stopped a car for a motor vehicle infraction and detected alcohol on the defendant's breath, who admitted drinking "a bottle of Heineken." 326 N.J. Super. at 237-38. After a pat-down search of defendant and his passengers yielded no weapons, the officer searched the car for open containers of alcohol and seized large quantities of cocaine. Id. at 238-39.

In reversing the trial court's order denying defendant's suppression motion, we held the "odor of alcohol the Trooper detected on Jones's breath, together with his nervousness and admission concerning the consumption of one beer, does not, when viewed with the other existing circumstances, establish a well-grounded suspicion that either [defendant] or his passengers had open containers of alcohol." Id. at 244. Rather, we concluded, "the Trooper's suspicion that the occupants of the vehicle had open containers is at best a mere hunch and, therefore, no better than a naked suspicion." Ibid. We noted, however, had the trooper "observed open containers in plain view or any outward signs such as spilled alcohol . . . a further search of the vehicle . . .

would have been warranted," but the smell of alcohol and defendant's admission he consumed one beer "may not, by itself, warrant a sobriety test, let alone a search of the vehicle for open containers." Id. at 245. We concluded such a search extended "beyond of the bound permitted and does not pass constitutional muster." Ibid.

We disagree with defendant's argument that Irelan is either factually or legally inapposite, and note Irelan has not been overturned and has remained good law for nearly twenty years. Although we are not bound by our prior decisions, see State v. Harrell, 475 N.J. Super. 545, 564 (App. Div. 2023), we depart only in certain limited situations. See, e.g., State v. Rochat, 470 N.J. Super. 392, 439 (App. Div. 2022) (giving "due consideration" to prior decision's "carefully considered statements"); Gerszberg v. Jacuzzi Whirlpool Bath, 286 N.J. Super. 197, 204 (App. Div. 1995) (declining to readdress issue decided in prior case which "has stood for twenty years without modification by rule or subsequent case law"); see also Pressler & Verniero, Current N.J. Court Rules, cmt. 3.3 on R. 1:36-3 (2024) (noting panels of the Appellate Division "have been reluctant to interfere in long-standing, unchallenged holdings of their co-equal panels, especially if doing so would unsettle years of established procedure").

We are further satisfied defendant's reliance on <u>Jones</u> is misplaced. There, we held the warrantless search of vehicle was improper as police did not have probable cause defendant drove while intoxicated or that the vehicle contained open containers of alcohol. <u>Jones</u>, 326 N.J. Super. at 244. We concluded defendant's minor traffic violation and admission he drank a single beer provided police with "at best a mere hunch" the vehicle contained open containers of alcohol. <u>Ibid.</u>

Here, however, police were armed with significantly more facts, and certainly more than a hunch, giving rise to probable cause to believe defendant was under the influence of narcotics and that evidence of that use was in defendant's vehicle. <u>See</u> <u>Irelan</u>, 375 N.J. Super. at 119. Indeed, Trooper Radetich observed: defendant "stumble over his own feet," his "slow" and "raspy" speech, "pinpoint" eyes, "white stuff" coming from defendant's mouth, and a "fresh" injection mark. Defendant also failed the one-leg stand and walk-and-turn field sobriety tests. It was evident to Trooper Radetich, based on his observations, including defendant's "fresh" injection mark, defendant appeared to be under the influence of drugs, had recently consumed a controlled dangerous substance, and had recently driven his vehicle for an unknown period of time. These facts amply supported Trooper Radetich's "reasonable well-

grounded suspicion" defendant's vehicle contained evidence of drug use consistent with <u>Irelan</u>, 375 N.J. Super. at 119.

## V.

Finally, defendant argues even if probable cause did exist, the circumstances leading to Trooper Radetich's conclusions did not come about spontaneously and unforeseeably but rather resulted from "a concerted and deliberate effort on the part of Radetich that unfolded over time." We are not persuaded.

In his argument, defendant relies on <u>Smart</u>, in which a confidential informant provided a detective with information concerning a known drug dealer's vehicle. 253 N.J. at 161. The detective and another officer followed defendant to a residence where police knew "multiple drug users lived." <u>Ibid.</u> The officers surveilled the car for over an hour, during which he saw defendant engage in what the officer believed to be a drug transaction. <u>Ibid</u>. Believing they had reasonable, articulable suspicion to conduct an investigative stop, police pulled the car over, but saw no sign of drugs. <u>Id.</u> at 161-62. Still suspecting the car contained drugs, police called for "a canine, whose positive drug 'hit' established probable cause." <u>Ibid</u>. Police immediately searched the car, resulting in the seizure of drugs and weapons. <u>Ibid</u>.

The trial court suppressed the evidence, finding police needed a warrant to search the car because the circumstances giving rise to probable cause "were not 'unforeseen and spontaneous,'" precluding application of the automobile exception under Witt — a decision affirmed by this court, State v. Smart, 473 N.J. Super. 87 (App. Div. 2022), and the Supreme Court, Smart, 253 N.J. at 174. The Court found the circumstances which ripened into probable cause could "hardly be characterized as unforeseeable" and "were anything but spontaneous." 253 N.J. at 172-73.

As to foreseeability, the Court noted the police, after a prolonged surveillance, "anticipated and expected they would find drugs" in defendant's car and "made the decision to conduct a canine sniff to transform their expectations into probable cause to support a search." Id. at 173. The Court found the canine sniff could not qualify as spontaneous because it "was just another step in a multi-step effort to gain access to the vehicle to search for the suspected drugs." Ibid.

In Irelan, discussed supra, we held the events leading to officers having probable cause to believe defendant drove while intoxicated, and consumed alcohol in the vehicle, were spontaneous and unforeseeable. 375 N.J. Super. at 119. There, we upheld the warrantless search of defendant's vehicle as police

"had no advance information about the defendant[,] they encountered him by chance while on patrol[,] . . . [and] it was not until after the stop and the subsequent roadside investigation that they acquired probable cause that the vehicle contained items of evidence they had the right to seize." Id. at 119.

We are convinced Smart does not warrant a different result. In that case, as noted, police expected to find drugs in defendant's vehicle because they received a tip about the vehicle being used in drug transactions and surveilled defendant for an extended period of time, including at a residence associated with drugs. As such, the canine alerting police to drugs in the vehicle was neither unforeseeable nor spontaneous.

Here, while defendant's arrival at the police station was not spontaneous, his arrival under the influence, and Trooper Radetich's observations indicating defendant drove to the station in that condition, were spontaneous and unforeseeable. We acknowledge Trooper Radetich suspected defendant was possibly under the influence when he called defendant an hour or two before defendant arrived at the station, but that suspicion was not the animating reason he requested defendant come to the police station. We are satisfied the events giving rise to probable cause to believe defendant drove while intoxicated, and Trooper Radetich's belief there was evidence of drug use in defendant's vehicle,

30

occurred spontaneously and unforeseeably, and were based on the Trooper's developing investigation.

In light of our decision, we need not, and decline to address the procedural or substantive propriety of the State's alternative argument, raised for the first time on appeal, the search of defendant's vehicle was lawful as a search incident to arrest.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2246-22