866 A.2d 1023 (2005)
375 N.J. Super. 100
STATE of New Jersey, Plaintiff-Appellant,
v.
Kenneth IRELAN, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted December 8, 2004.
Decided February 14, 2005.
*1025 Peter C. Harvey, Attorney General, for appellant (Frank Muroski, Deputy Attorney General, of counsel and on the brief).
Evan F. Nappen, Morristown, for respondent (Richard V. Gilbert, on the brief).
Before Judges BRAITHWAITE, LISA and WINKELSTEIN.
The opinion of the court was delivered by
*1026 LISA, J.A.D.
This appeal concerns the warrantless search of the passenger compartment of an automobile in connection with a stop and arrest for driving while intoxicated (DWI), N.J.S.A. 39:4-50(a). As a result of the search, the police found and seized a loaded handgun and defendant was indicted for its unlawful possession. N.J.S.A. 2C:39-5b. The trial judge granted defendant's suppression motion. He found that the search did not qualify for the search incident to arrest exception to the warrant requirement under the bright-line rule interpreting the Fourth Amendment of the United States Constitution laid down in New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), because in State v. Pierce, 136 N.J. 184, 208, 642 A.2d 947, 959 (1994), our Supreme Court held "that under article I, paragraph 7 of the New Jersey Constitution the rule of Belton shall not apply to warrantless arrests for motor-vehicle offenses." The judge further found that the search did not satisfy the requirements of the automobile exception because the police had no probable cause to believe the automobile contained evidence of the offense for which defendant was arrested (namely open containers of alcohol) nor were exigent circumstances present. See State v. Cooke, 163 N.J. 657, 661, 751 A.2d 92, 94 (2000).
Because the evidence needed to support the State's case was suppressed, the indictment was dismissed. The State appeals, contending the search was valid under both of the mentioned exceptions. We hold that the search was valid under the automobile exception and reverse.[1] We therefore find it unnecessary to determine whether the search incident to arrest exception applies.
On July 13, 2003 at 3:25 a.m., Trooper David Feldstein was patrolling the Atlantic City Expressway with his partner, Trooper Brian Carswell. Defendant was driving an automobile with one front-seat passenger. The troopers observed defendant quickly pull out of the toll plaza, cut across several lanes, pass another vehicle on the shoulder, and exit the Expressway. Because of the observed traffic violations, the troopers followed defendant and uneventfully pulled him over on a local street.
Feldstein approached the driver's side and Carswell approached the passenger's side. With both occupants in the car, Feldstein conversed with defendant, checking his credentials. Feldstein detected an odor of alcohol and asked defendant *1027 if he had been drinking, which he denied. When asked if the passenger had been drinking, defendant acknowledged he had. When defendant was asked to identify the passenger, defendant provided an incorrect name. Feldstein asked defendant to exit to the rear of the vehicle, where he again inquired whether defendant had been drinking. This time defendant said he "might have had one." While Carswell stayed with the passenger, who remained seated in the vehicle, Feldstein performed a series of field sobriety tests on defendant.
Feldstein determined, based on his observations of defendant and defendant's performance of the tests, to arrest him for DWI. He searched and handcuffed defendant behind his back and placed him in the back seat of the troop car, which was parked behind defendant's vehicle. He informed defendant he would take him to the stationhouse to administer a Breathalyzer test. The trial judge found Feldstein's testimony credible and found that he had probable cause to believe that defendant was intoxicated. The finding is amply supported by the record and we will not interfere with it. State v. Locurto, 157 N.J. 463, 470-71, 724 A.2d 234, 238-39 (1999); State v. Johnson, 42 N.J. 146, 162, 199 A.2d 809, 818 (1964).
At that point the passenger, who had called his girlfriend on his cellular phone and made arrangements for her to pick him up at a nearby location, was allowed to leave. He exited the vehicle and walked away. About four minutes later, pursuant to "standard operating procedures," Feldstein advised dispatch that he would "be doing a search incidental." The two troopers then opened the two front doors of defendant's vehicle and searched the passenger compartment, one leaning in from each side. In the center console, they found a loaded handgun. There is no suggestion that the console was locked. It was large enough to hold an alcohol container. The search of defendant's person revealed that he possessed a cellular phone.
The troopers "cleared" the stop at 3:55 a.m. During the half-hour duration of the stop, fifty-one vehicles passed by, as documented by the videotape of the incident, which is part of the evidentiary record. During that interval, there was considerable police radio discussion regarding a serious accident on the Expressway, with injuries, emergency vehicles and traffic backing up. All available units were requested to respond. Before leaving the scene, Feldstein requested that dispatch send a tow truck to impound defendant's vehicle, see N.J.S.A. 39:4-50.23, and advised, "keys rear driver's side tire." The tow truck arrived as the troopers departed.
Warrantless searches are presumed invalid, and to establish validity the burden is on the State to establish that the search falls within one of the recognized exceptions to the warrant requirement. State v. Patino, 83 N.J. 1, 7, 414 A.2d 1327, 1330 (1980). The search incident to arrest exception finds its historical rationale in the need to disarm an arrestee so he can be safely taken into custody and to preserve evidence for later use at trial. Knowles v. Iowa, 525 U.S. 113, 116, 119 S.Ct. 484, 487, 142 L.Ed.2d 492, 498 (1998). The exception deems reasonable under the Fourth Amendment the search of the person of the arrestee and the area within the arrestee's immediate control, where he might reach and grab a weapon or evidentiary item. Chimel v. California, 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685, 694 (1969).
In the context of a motor vehicle stop, the United States Supreme Court has adopted a bright-line rule authorizing the *1028 search of the passenger compartment and containers found within the passenger compartment upon the stop and lawful custodial arrest of a motorist. Belton, supra, 453 U.S. at 460, 101 S.Ct. at 2864, 69 L.Ed.2d at 774-75. The Court predicated the rule on "the generalization that articles inside the relatively narrow compass of the passenger compartment of an automobile are in fact generally, even if not inevitably, within `the area into which an arrestee might reach in order to grab a weapon or evidentiary ite[m].'" Ibid. (citing Chimel, 395 U.S. at 763, 89 S.Ct. at 2040, 23 L.Ed.2d at 694). The Court thus reasoned that to establish a consistent and workable rule in motor vehicle cases, it would "read Chimel's definition of the limits of the area that may be searched in light of that generalization" thereby permitting the search of the vehicle "as a contemporaneous incident of that arrest." Ibid. The Court has recently reaffirmed and slightly expanded the rule by making it applicable to recent occupants of motor vehicles. Thornton v. United States, 541 U.S. 615, 124 S.Ct. 2127, 158 L.Ed.2d 905 (2004).
There can be no doubt that the troopers had the right to make a custodial arrest of defendant for DWI. It is a serious motor vehicle offense, see Pierce, supra, 136 N.J. at 189-93, 642 A.2d at 949-52, defendant was a danger to himself and the public, see R. 3:3-1(c)(3), and there was a need for further investigation, namely administration of a Breathalyzer test. See Pierce, supra, 136 N.J. at 192, 642 A.2d at 951; N.J.S.A. 39:4-50.2. It is equally clear that, under Belton, the search at issue here did not run afoul of the Fourth Amendment. Of course, states can provide greater protections to their citizens under state constitutional provisions. Cooke, supra, 163 N.J. at 666-67, 751 A.2d at 97. It is less clear whether the search of defendant's vehicle was permissible under article I, paragraph 7 of the New Jersey Constitution.
We do not agree with the trial judge's reliance on Pierce for the blanket proposition that a warrantless search of a motor vehicle incident to an occupant's arrest for a motor vehicle violation can never satisfy the search incident to arrest exception under the Belton rule. In Pierce, the driver was stopped for speeding and arrested for driving while his license was suspended. Pierce, supra, 136 N.J. at 187, 642 A.2d at 948. The Court concluded that driving while suspended was a sufficiently serious motor vehicle offense to justify arrest. Id. at 205-08, 642 A.2d at 958-59. But the Court declined to apply Belton's bright-line rule "indiscriminately" to vehicular searches incident to arrests for motor vehicle violations. Id. at 209-10, 213, 642 A.2d at 960.
In Pierce, the Court discussed at length the widespread criticism of the Belton rule, id. at 200-03, 642 A.2d at 955-57, and determined that, because another exception to the warrant requirement applied, it was not necessary to its disposition of the case before it to decide whether the Belton rule was compatible with the New Jersey Constitution. Id. at 208, 642 A.2d at 959. The Court stated: "We hold only that under article I, paragraph 7 of the New Jersey Constitution the rule of Belton shall not apply to warrantless arrests for motor-vehicle offenses." Ibid.
In so holding, the Court expressed its reasons, some of which would apply to a DWI arrest, and some of which would not.[2] First, the justification to search for evidence to prevent its destruction or loss diminishes significantly with "routine" motor *1029 vehicle violations. Id. at 210, 642 A.2d at 960. But the Court excepted from this reason a DWI arrest: "[W]hen the predicate offense is a motor-vehicle violation, the vehicle stopped by police would not ordinarily contain evidence at risk of destruction that pertains to the underlying offense, except in the case of N.J.S.A. 39:4-50 (driving while intoxicated) and N.J.S.A. 39:4-49.1 (operating vehicle while possessing controlled dangerous substances)." Ibid. (emphasis added). Second, when the arrestee has been handcuffed and placed in the patrol car, and the passengers have been removed from the vehicle and frisked, the justification for the vehicle search is "minimal." Ibid."Thus, in the context of arrests for motor-vehicle violations, the bright-line Belton holding extends the Chimel rule beyond the logical limits of its principle." Id. at 210-11, 642 A.2d at 960. This reservation about the efficacy of the Belton rule applies with equal force to DWI arrests, including the one here, where defendant was handcuffed and in the troop car and the passenger had left the scene. Third, allowing application of the Belton rule to arrests for motor vehicle offenses would create an incentive for police to make custodial arrests under the authority of N.J.S.A. 39:5-25 "which they otherwise would not make as a cover for a search which the Fourth Amendment otherwise prohibits." Id. at 211, 642 A.2d at 961 (quoting 3 Wayne R. LaFave, Search and Seizure, § 7.1(c) at 21 (2d ed. 1987)). This reason does not apply to DWI offenses, where there is a clear right and duty to make a custodial arrest.
Our assessment of the limited scope of the Pierce holding is bolstered by the Court's subsequent characterization of its decision. In Cooke, the Court cited Pierce as an example of its interpretation of the State Constitution granting greater protection than the United States Constitution, "refusing to adopt [a] blanket rule that would have permitted warrantless automobile searches incident to all arrests." Cooke, supra, 163 N.J. at 666, 751 A.2d at 97 (emphasis added). In State v. Dangerfield, 171 N.J. 446, 462, 795 A.2d 250, 259 (2002), citing Pierce, the Court stated it has "interpreted some provisions of the Motor Vehicle Code to hold that the police may not undertake full-blown searches of a motor vehicle or its occupants based on contemporaneous arrests for minor motor vehicle violations." (Emphasis added). From these comments, we conclude that the Court, while refusing to follow Belton's broad sweep, has not ruled out adoption of the Belton rule in some circumstances.
One year prior to the United States Supreme Court's Belton decision, our Supreme Court expressed its adherence to the case-by-case Chimel approach in applying the search incident to arrest exception in the motor vehicle context. State v. Welsh, 84 N.J. 346, 419 A.2d 1123 (1980). The arrestee was removed from his vehicle, handcuffed and seated in the police car; his two or three-year-old son was with him; and three State Troopers were present. Id. at 355, 419 A.2d at 1128. The Court found the search invalid because the arrestee's vehicle was beyond his reach, as defined in Chimel, and with his young son and three troopers present, it was highly improbable that he would have attempted to resist, escape or destroy evidence. Ibid.
Several months after Belton, our Supreme Court found a warrantless motor vehicle search valid under the automobile exception. State v. Alston, 88 N.J. 211, 440 A.2d 1311 (1981). The Court noted it was unnecessary to consider whether the search was also valid as incident to a lawful arrest, but observed that under the recent decision in Belton, application of the United States Supreme Court's Chimel analysis in Belton would have yielded a *1030 contrary result in Welsh. Id. at 235 n. 15, 440 A.2d at 1323 n. 15. The Court therefore left "to future consideration the question of the continued viability of [its] analysis of the scope of the Chimel exception as expressed in Welsh." Ibid.
That consideration came in Pierce, but was limited to the context of minor motor vehicle offenses, where the nature of the offense would not have the potential to yield items of evidence in the vehicle, where the Court was concerned that police might be encouraged to make pretextual arrests, and where Chimel's spatial limitation was not met. As we have discussed, however, neither in Pierce nor in the Court's subsequent comments about Pierce has the Court ruled out the adoption of Belton for arrests other than for minor motor vehicle offenses, as opposed to the case-by-case application of Chimel followed in Welsh.
The State relies on State v. Goodwin, 173 N.J. 583, 803 A.2d 102 (2002), in support of its contention that our Supreme Court has adopted Belton. There the Court considered the timeliness of the defendant's second post-conviction relief (PCR) petition, filed eight years after his conviction, well beyond the five-year deadline imposed by Rule 3:22-12. Id. at 588-89, 803 A.2d at 105-06. After finding an absence of excusable neglect to justify the delay, the Court proceeded to analyze the merits of the PCR petition, finding a lack of merit. Id. at 595, 803 A.2d at 109.
An asserted basis for ineffective assistance of counsel was the failure to file a suppression motion with respect to the warrantless search of the defendant's vehicle immediately after he was stopped and arrested for murder and related charges arising out of a shooting that had occurred a short time earlier. Citing Belton as authority, and describing its bright-line rule, the Court concluded that the search of the defendant's vehicle was "justified as a search incident to a lawful arrest." Id. at 599, 803 A.2d at 112. Therefore, because the bullets found in the car "were discovered during a valid search incident to the arrest, the bullets properly were admitted into evidence and would not have been suppressed." Id. at 601, 803 A.2d at 113.
Nowhere in Goodwin did the Court cite Pierce or advert to its extensive discussion in Pierce of the criticism of the Belton rule. We discern from this that, because of the procedural posture by which the PCR issue came before the Court and the timing of the underlying events, the Court deemed it unnecessary to resume the discussion it forecast in Alston and began in Pierce regarding the viability of the Belton rule under the New Jersey Constitution in cases other than arrests for minor motor vehicle offenses.
In analyzing counsel's performance in light of the Strickland/Fritz[3] test, the Court "examine[d] the law as it stood at the time of counsel's actions, not as it subsequently developed." Id. at 597, 803 A.2d at 111. The crime occurred in 1989, and the trial was conducted in 1990. Id. at 589-91, 803 A.2d at 105-07. A suppression motion filed at that time would have been post-Belton and pre-Pierce. Counsel would have reasonably believed that a suppression motion would have been meritless and the motion would have likely been denied under the Belton rule; neither counsel nor the trial court would have then been aware of the not-yet-expressed concerns about the rule in Pierce. But see *1031 Alston, supra, 88 N.J. at 235 n. 15, 440 A.2d at 1323 n. 15 (reserving the issue).
For these reasons, we find uncertainty in ascribing to the Court in Goodwin a holding adopting Belton in all cases except those previously excised in Pierce. See State v. Eckel, 374 N.J.Super. 91, 101 n. 4, 863 A.2d 1044, 1050 n. 4 (App.Div.2004) (declining to "conclude that the Court [in Goodwin] intended to decide sub silentio such an important issue, previously reserved in Pierce.")
The State further relies on State v. Cusick, 110 N.J.Super. 149, 264 A.2d 735 (App.Div.1970), where we upheld a warrantless motor vehicle search following the defendant's stop and arrest for DWI. Relying on dictum in State v. Boykins, 50 N.J. 73, 232 A.2d 141 (1967), we held "that it is not unconstitutional for a police officer to search for alcohol as an incident to an arrest for drunken driving." Id. at 151, 264 A.2d at 736. We reasoned that although a vehicle search would not be justified as an incident to every traffic violation, a search is justified when it is "directed towards and may in fact produce evidence related to the offense for which the arrest was made." Id. at 152, 264 A.2d at 737.
The State argues that Cusick is directly on point and is the controlling authority. However, factually, the motorist was not handcuffed and placed in the police car prior to the search, as occurred in the case before us, and, legally, there was no discussion of the Chimel proximity issue, although implicit in the opinion is that defendant was not restrained and where he was standing was within reach of the vehicle at the time of the search. In the absence of a Belton-type rule, a Chimel analysis as expounded in Pierce, in the case before us, where defendant was safely secured in the troop car, would not lead us to the same result here as we reached in Cusick.
We conclude from this review of our existing case law that (1) the police may lawfully effect a custodial arrest of a motorist when there is probable cause of a DWI violation; (2) incident to the arrest, the police may search the person of the arrestee; and (3) a contemporaneous warrantless search of the vehicle is permissible if in the totality of the circumstances, considering factors such as those discussed in Chimel and Welsh, the vehicle is within the arrestee's immediate control, such that he or she would have the ability to reach an evidentiary item or a weapon.
Unanswered by the existing decisions of our Supreme Court is whether the New Jersey Constitution prohibits as a search incident to arrest a vehicle search when a DWI arrestee is restrained and secured away from the vehicle and there is no reasonable likelihood that he or she could reach into the vehicle. Those circumstances exist in this case, with the added circumstance that two troopers were present with only defendant remaining after his passenger was allowed to leave the scene.
Another panel of this court has recently concluded that our Supreme Court has not "definitively" adopted the Belton rule, and the panel declined to follow it in light of the greater protections afforded by our State Constitution. Eckel, supra, 374 N.J.Super. at 100, 863 A.2d at 1049-50. In Eckel the arrestee was handcuffed and seated in the patrol car. Id. at 93, 863 A.2d at 1045. The basis for the arrest was the existence of an outstanding warrant for failure to appear in municipal court. Id. at 93, 863 A.2d at 1045. The sole basis advanced by the State to justify the warrantless vehicle search was the search incident to arrest exception. Id. at 95, 863 A.2d at 1047. It was therefore necessary for the panel to decide the issue.
*1032 We are not confronted with that necessity here because the State advances an alternate basis to justify the search, namely the automobile exception. For the reasons to follow, we conclude that the search in this case was valid under the automobile exception. We therefore do not reach the issue of the search's validity as incident to defendant's arrest for DWI.
In Pierce, the Court observed that warrantless motor vehicle searches are usually analyzed under the automobile exception, noting that "the very same facts that constitute probable cause to arrest a vehicle's occupant often will afford police officers probable cause to believe that a vehicle contains evidence of crime or contraband." Pierce, supra, 136 N.J. at 204, 642 A.2d at 957. The Court expressed its preference for application of the automobile exception, when possible, because, unlike the search incident to arrest exception, it is grounded in probable cause:
[P]olice officers are authorized under the "automobile exception" to make warrantless searches of vehicles that they have stopped on the highway whenever they have probable cause to believe that a vehicle contains contraband or evidence of a crime. Alston, supra, 88 N.J. at 230-31, 440 A.2d 1311 [, 1321]. Because probable cause "is the constitutionally-imposed standard for determining whether a search and seizure is lawful," and "occupies a position of indisputable significance in search and seizure law," [State v. Novembrino, 105 N.J. 95, 105-06, 519 A.2d 820, 825-26], vehicle searches sustainable under the "automobile exception" and based on probable cause stand on firmer ground than those that depend for their validity on a judicially-created exception to the warrant requirement, such as the Belton rule, which requires no proof of probable cause.
[Id. at 214, 642 A.2d at 962.]
A conceptual distinction separates the automobile exception from the search incident to arrest exception. The search of a motor vehicle incident to arrest does not require the existence of probable cause to believe the vehicle contains contraband, whereas a search under the automobile exception is justified not by the arrest of the occupant but by circumstances establishing such probable cause. State v. Colvin, 123 N.J. 428, 435, 587 A.2d 1278, 1282 (1991). In Welsh, supra, 84 N.J. at 354-55, 419 A.2d at 1127, the Court stated the proposition thusly:
Where there is probable cause to search an automobile, the search is not dependent on an arrest. Carroll v. United States, [267 U.S. 132, 158-59, 45 S.Ct. 280, 287, 69 L.Ed. 543, 554 (1925)]. Conversely, if there is no independent probable cause basis for the search, the mobility of the car and the nature of the offense are irrelevant. Rather, the arrestee's freedom of movement and the passage of time become the controlling factors. As noted by Professor LaFave, "the Chimel rationale relates to the arrestee's access to the place searched rather than the risk that the evidence might otherwise become unavailable." W. LaFave, supra, at § 7.1(b).
Thus, under the automobile exception, the reasonableness of the warrantless search is justified not to assure that evidence is not immediately grabbed and destroyed by an arrestee who is then present but rather to assure that evidence is not "otherwise" removed or destroyed. If the circumstances furnish the police with probable cause that the vehicle contains contraband, it is not the immediate ability of an occupant or recent occupant of the vehicle to reach the contraband that establishes the required exigency to obviate the warrant requirement. Rather, "[t]he primary *1033 rationale for this exception lies in the exigent circumstances created by the inherent mobility of vehicles that often makes it impracticable to obtain a warrant." Alston, supra, 88 N.J. at 231, 440 A.2d at 1321 (citing Chambers v. Maroney, 399 U.S. 42, 51, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419, 428 (1970)). The trial judge misperceived this distinction when he found a lack of "exigent circumstances because [at the time of the search] nobody was in the car, but the Troopers."
Notwithstanding the United States Supreme Court's interpretation of the Fourth Amendment to the contrary, our Supreme Court has interpreted article I, paragraph 7 of the New Jersey Constitution to require exigent circumstances in addition to probable cause to satisfy the automobile exception. State v. Cooke, supra, 163 N.J. at 670-71, 751 A.2d at 99. The exigency, in the automobile exception context, does not dissipate simply because the vehicle's occupants have been removed, arrested, or otherwise restricted in their freedom of movement. Alston, supra, 88 N.J. at 234, 440 A.2d at 1323. The vehicle remains readily movable and accessible to third parties, and "when there is probable cause to conduct an immediate search at the scene of the stop, the police are not required to delay the search by seizing and impounding the vehicle pending review of that probable cause determination by a magistrate." Id. at 234-35, 440 A.2d at 1323. See also State v. Colvin, 123 N.J. 428, 435, 587 A.2d 1278, 1282 (1991); State v. Esteves, 93 N.J. 498, 505, 461 A.2d 1128, 1131 (1983).
It is not significant in this case that the troopers' stated basis for the search was that it was incident to defendant's arrest. The troopers' state of mind, intent or motivation does not invalidate action on their part that is objectively reasonable. State v. Bruzzese, 94 N.J. 210, 220, 463 A.2d 320, 325-26 (1983), cert. denied, 465 U.S. 1030, 104 S.Ct. 1295, 79 L.Ed.2d 695 (1984). We therefore consider their conduct under the objectively reasonable standard. Feldstein testified he was looking for open alcohol containers, which the center console, where the gun was found, was large enough to hold.
Open alcohol containers in the vehicle would have a tendency in reason to prove recent alcohol consumption, N.J.R.E. 401, and thus would be evidential in defendant's DWI prosecution. In many DWI cases, the weight attributable to such evidence would probably be low. In some cases it might be very probative (e.g. where there is no Breathalyzer reading or blood test, or where the defendant denied drinking alcohol or admitted to consuming only a small quantity or a particular type). Further, the presence of an open alcohol container in an operated vehicle is itself prohibited, rendering the item contraband independent of the DWI prosecution. See N.J.S.A. 39:4-51a and -51b. We are satisfied an open alcohol container is an item the police would have the right to seize. We must now determine whether the troopers had probable cause to believe defendant's vehicle contained open containers.
"Probable cause requires `a practical, common-sense decision whether, given all the circumstances * * * there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" State v. Demeter, 124 N.J. 374, 380-81, 590 A.2d 1179, 1183(1991) (quoting Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 548 (1983)). The belief required to establish probable cause "does not demand any showing that such belief be correct or more likely true than false." State v. Johnson, 171 N.J. 192, 215, 793 A.2d 619, 633 (citations omitted). Probable cause *1034 requires more than a mere hunch or bare suspicion, but less than the legal evidence necessary to convict; it requires a well-grounded suspicion. State v. Burnett, 42 N.J. 377, 386-87, 201 A.2d 39, 44-45 (1964).
In Pierce, the Court stated that for most motor vehicle violations the vehicle "would not ordinarily contain evidence at risk of destruction that pertains to the underlying offense, except in the case of violations of N.J.S.A. 39:4-50 (driving while intoxicated) and N.J.S.A. 39:4-49.1 (operating vehicle while possessing controlled dangerous substances)." Pierce, supra, 136 N.J. at 210, 642 A.2d at 960 (emphasis added). The Court implicitly acknowledged the potential that evidence of the offense would "ordinarily" be found with a DWI offense. See also State v. Judge, 275 N.J.Super. 194, 204-05, 645 A.2d 1224, 1229-30 (App.Div.1994). In Boykins the Court stated that "if the officer has reason to believe the driver is under the influence of liquor or drugs, he may search the car for alcohol or narcotics." Boykins, supra, 50 N.J. at 77, 232 A.2d at 143. And in Cusick, adhering to the Court's statement in Boykins, we found it constitutionally permissible to search for alcohol incident to an arrest for DWI. Cusick, supra, 110 N.J.Super. at 151, 264 A.2d at 736-37. Accord Vasquez v. State, 990 P.2d 476, 488 (Wyo.1999) (finding it reasonable to search passenger compartment of vehicle of motorist exhibiting indicia of intoxication "for any intoxicant, alcohol or narcotic, as evidence related to the crime of driving under the influence.") But see State v. Jones, 326 N.J.Super. 234, 244-45, 741 A.2d 104, 110 (App.Div.1999) (finding no probable cause to search vehicle for open alcohol containers where motorist, stopped for a turn signal violation, did not appear intoxicated but exhibited odor of alcohol on his breath and admitted to drinking one bottle of beer).
In the case before us, the troopers initially observed defendant while driving on the open highway. After being stopped for several minor traffic violations, the roadside investigation provided probable cause that defendant was intoxicated. A well-grounded suspicion is one based on facts, as opposed to a "bare" suspicion or a hunch. The salient facts known to the troopers were that defendant reasonably appeared intoxicated, that he therefore had recently consumed a substantial quantity of alcohol, and that he had recently occupied the vehicle for some unknown period of time. We hold that these facts are sufficient to support a reasonable well-grounded suspicion that alcohol was consumed in the vehicle, and thus the vehicle contained open containers of alcohol. Therefore, the probable cause prong of the automobile exception is met.
We are satisfied that the exigent circumstances prong has also been established. The troopers had no advance information about defendant; they encountered him by chance while on patrol. Indeed, it was not until after the stop and the subsequent roadside investigation that they acquired probable cause that the vehicle contained items of evidence they had the right to seize. Therefore, the events that gave rise to probable cause were unforeseen, spontaneous, and developed swiftly. See Cooke, supra, 163 N.J. at 672, 751 A.2d at 100. Considering the early-morning hour, the requirement that the troopers promptly transport defendant to the stationhouse to administer a Breathalyzer test, and the pressing need for assistance because of the accident on the Expressway, it was "impracticable for the police to procure a search warrant and immediate action was necessary." Id. at 670, 751 A.2d at 99.
Third parties had access to defendant's vehicle. Defendant's passenger was fully *1035 aware of the situation and was at liberty. Both the passenger and defendant possessed cellular phones and could have informed others. The roadside sobriety tests and arrest were conducted in plain view of the many vehicles that passed by. It would have been unduly burdensome and unreasonably restrictive to require the police to post a guard with the vehicle until a search warrant could be obtained. See id. at 674, 751 A.2d at 101. That impoundment of the vehicle was anticipated at the time of the search does not affect our conclusion because, as we have stated, if there is probable cause to search a vehicle at the scene of the stop, the police are not required to delay the search pending impoundment and issuance of a search warrant.[4]
Reversed and remanded.
NOTES
[1] We outline only briefly the procedural events that led to the State's appeal. After the June 17, 2004 suppression motion, the Atlantic County Prosecutor's Office determined it would not seek interlocutory review and moved to dismiss the indictment. However, before the prosecutor received an order of dismissal, the Attorney General superceded the Atlantic County Prosecutor for the purpose of filing an interlocutory appeal. The prosecutor inadvertently failed to seek to withdraw its dismissal motion. One day after receiving the signed dismissal order the prosecutor moved to vacate it and reinstate the indictment. The judge denied the motion on July 26, 2004 because he believed he lacked jurisdiction to reinstate a non-existent indictment. We disagree. On a motion made within twenty days after service of a final order, the court is authorized to rehear and modify the order. R. 1:7-4(b). The State appealed on August 2, 2004. It is plain that the disposition of the suppression motion was the sole basis for dismissal. We reject as lacking sufficient merit to warrant discussion in a written opinion defendant's arguments that reinstating the indictment would cause him unfair prejudice, upset his interest in finality, and be fundamentally unfair; that the trial judge lacked jurisdiction to reinstate the indictment; and that the State's appeal is untimely. R. 2:11-3(e)(2). In light of our reversal of the suppression motion, we direct that the indictment be reinstated by an appropriate order on remand.
[2] We address only the reasons pertaining to preservation of evidence, because the State has not asserted any issue in this case of a concern for officer safety.
[3] Strickland v. Washington, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674, 698, reh'g denied, 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984); State v. Fritz, 105 N.J. 42, 58, 519 A.2d 336, 345 (1987).
[4] "John's Law," N.J.S.A. 39:4-50.22, -50.23, allows for a temporary impound to assure that the intoxicated driver does not resume operation of the vehicle after being released from police custody. Subject to certain conditions, the vehicle shall be released after impounded to its owner, if not the arrestee, or to any other responsible party authorized by the arrestee. N.J.S.A. 39:4-50.23c, d. Further, as authorized by N.J.S.A. 39:4-50.22, the Attorney General has issued a directive providing that notwithstanding the facially mandatory impoundment provision of N.J.S.A. 39:4-50.23a, if a suitable passenger is present to remove the vehicle or make arrangements for its removal, impoundment is not permitted. Attorney General Law Enforcement Directive No. 2004-1, Appendix B, Guidelines, Mandatory 12-Hour Impoundment of Motor Vehicles. (February 20, 2004).