# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1735-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JOSEPH A. ARUANNO, a/k/a
JOSEPH ARVANNO, and JOSEPH
ARUANO,

    Defendant-Appellant.

_____

Submitted September 18, 2024 – Decided October 28, 2024

Before Judges Marczyk and Paganelli.

On appeal from the Superior Court of New Jersey, Law Division, Cape May County, Indictment No. 97-01-0016.

Jennifer Nicole Sellitti, Public Defender, attorney for appellant (Andrew R. Burroughs, Designated Counsel, on the briefs).

Jeffrey H. Sutherland, Cape May County Prosecutor, attorney for respondent (Gretchen A. Pickering, Deputy First Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Joseph Aruanno appeals from the November 30, 2022 order denying his fifth application for post-conviction relief (PCR) and denying his motion for reconsideration regarding the denial of his fourth PCR. Based on our review of the record and the applicable legal principles, we affirm.

I.

On December 10, 1996, at approximately 5:30 p.m., the victim, eight-year-old G.B., was playing on the front porch of her uncle's Wildwood residence when a man approached her, pushed her against the building, "put his hand down [her] pants," and touched her vagina. G.B. yelled "stop" when he touched her, and the man left towards "the bay." G.B. ran in the house and told her mother, A.D., what happened and gave a description of the man.

A.D. called the police, who arrived shortly thereafter. G.B. described the perpetrator to Officer Steven McShaffry. Officer McShaffry communicated the perpetrator's description over his police radio. Officer James Nanos also responded to the call and advised Officer McShaffry he saw a man who matched the suspect's description as he responded to the call. Officer McShaffry left the residence to search for the individual. Officer McShaffry located defendant

2

shortly thereafter in a Wawa parking lot, two blocks from where G.B. was assaulted.

Police transported G.B. to the Wawa to determine if G.B. could identify him. G.B. and A.D. heard someone over Officer Nano's radio indicate that police had stopped an individual matching the description G.B. provided, but that G.B. needed to see the man to determine whether it was the individual who assaulted her. Defendant initially refused to look at G.B. She then heard his voice over the police radio and confirmed that she recognized the voice. Defendant eventually turned in G.B.'s direction, and she again identified him as the individual who assaulted her. The time between the assault and the identification was approximately fifteen minutes.

After Officer McShaffry was told the victim identified the suspect, he advised defendant he was under arrest and told him to turn around to be handcuffed. Defendant then "darted . . . off," and the officers engaged in a foot pursuit. Officer McShaffry was eventually able to "grab[]" and "tackle[]" defendant with another officer.

Detective Kenneth Gallagher, a detective with the Wildwood Police Department, testified defendant was provided his Miranda[1] rights and signed a

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

 A-1735-22

Miranda card. He testified that during defendant's interview, defendant "started to express remorse for the victim . . . [and said] he was sorry for what [happened to] the victim." He further testified, "I asked him if he had been on the porch of the victim or had any contact with the victim? He started to nod his head in an affirmative matter, up and down. He continued to cry as he did so." Detective Gallagher indicated that defendant stated he would sign a confession, but he never did. Detective Gallagher explained, "I tried to get some details [about] what he was talking about . . . . And he says, I'm sorry. I can't. My life is over. I've ruined my life. [He] [b]egan to cry again and told me that he wanted to terminate the interview."

On January 8, 1997, defendant was indicted for second-degree sexual assault, N.J.S.A. 2C:14-2(b); and third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(b). In May 1998, a jury found defendant guilty of second-degree sexual assault. In February 1999, the court denied defendant's motion for a new trial and sentenced him to ten years in prison with a five-year period of parole ineligibility, with community supervision for life (CSL) and registration under Megan's Law. The court determined defendant's conduct was characterized by a pattern of repetitive and compulsive behavior and was not

amenable to treatment.[2]  The judgment of conviction was filed in February 1999.

In October 2001, we affirmed defendant's conviction and sentence.  State v. Aruanno, No. A-4188-98 (App. Div. Oct. 9, 2001).  In September 2003, defendant filed his first pro se PCR petition.  In January 2007, defendant's first PCR counsel filed an amended petition and supplemental brief in support of the first PCR petition.  In May 2007, the first PCR court denied defendant's petition.

Defendant appealed the denial of the first PCR petition.  In April 2009, we remanded the matter for an evidentiary hearing to consider defendant's Wade[3] and Michaels[4] claims.  In November 2009, the first PCR court conducted a remand hearing and denied the PCR petition.  In May 2012, we affirmed the trial court's order denying the first PCR petition.  State v. Aruanno, No. A-6223-09 (App. Div. May 31, 2012).

Meanwhile, in April 2004, the State filed a petition to involuntarily civilly commit defendant under the Sexually Violent Predators Act (SVPA).  In May

---

[2] Defendant had previously pled guilty in 1994 in Florida to second-degree lewd conduct and was sentenced to ten years' probation.

[3] United States v. Wade, 388 U.S. 218 (1967).

[4] State v. Michaels, 136 N.J. 299 (1994).

2005, following a hearing, the court entered judgment declaring defendant a sexually violent predator in need of involuntary commitment. We affirmed the judgment. In re Civil Commitment of J.A., No. A-6499-04 (App. Div. Mar. 1, 2007). Defendant remains committed.

In May 2014, defendant filed a second PCR petition. Defendant raised the same issues asserted in the first PCR but also claimed the first PCR court failed to bring him to court for the second day of the hearing. This petition was denied as untimely. In July 2015, we dismissed defendant's appeal. State v. Aruanno, No. A-4468-14 (App. Div. July 8, 2015).

In June 2016, defendant filed his third PCR petition, which was subsequently denied as being untimely. Defendant appealed from the order and in July 2017, we dismissed the appeal as being filed out of time. Thereafter, we denied defendant's motion for reconsideration. In January 2019, defendant filed a fourth PCR petition This petition was also dismissed as untimely. The fourth PCR court found the PCR "raised no new issues."

In December 2020, defendant filed a motion for reconsideration regarding the denial of his fourth PCR petition.[5] In October 2021, defendant filed an

---

[5] Defendant asserts he filed the motion for reconsideration on February 6, 2019, but the PCR court indicated it was not filed until December 16, 2020.

amended petition for PCR. In November 2021, defendant filed a fifth PCR petition.

On November 30, 2022, the fifth PCR court,[6] as discussed more fully below, denied both defendant's fifth PCR and his motion for reconsideration regarding the denial of his fourth PCR, as untimely, without an evidentiary hearing. The court also, "[f]or [the sake of] completeness" addressed the substance of defendant's arguments but found they lacked merit.

This appeal followed.

II.

Defendant raises the following points on appeal:

> POINT I
>
> AS DEFENDANT HAS PRESENTED COGNIZABLE CLAIMS OF INEFFECTIVE ASSISTANCE OF COUNSEL, THE INTERESTS OF JUSTICE AND FUNDAMENTAL FAIRNESS REQUIRE THE RELAXATION OF PROCEDURAL BARS.
>
> > (1) Contrary to the fourth PCR court, the procedural bars in this case may be relaxed in the interest of justice and fundamental fairness.

---

[6] For ease of reference, we will refer to the fifth PCR court below as the "PCR court," and the other PCR courts by their corresponding number.

(2) First PCR and appellate counsel were ineffective by failing to argue that the trial court committed plain error when it failed to properly charge the jury on identification.

(3) First PCR counsel and remand PCR counsel were ineffective by failing to argue that as defendant had been threatened and coerced trial counsel was ineffective when he failed to move to suppress his police statements.

(4) First PCR and remand PCR counsel were ineffective by failing to argue that trial counsel was ineffective by failing to move for a mistrial on the grounds of jury taint.

POINT II

AS THERE ARE GENUINE [ISSUES] OF MATERIAL FACT IN DISPUTE AS TO WHETHER DEFENDANT RECEIVED EFFECTIVE LEGAL REPRESENTATION IN BOTH HIS FIRST AND REMANDED PCR, AN EVIDENTIARY HEARING IS WARRANTED.

POINT III

THE PCR COURT SHOULD HAVE ENFORCED THE TERMS OF DEFENDANT'S SENTENCE AND ORDERED HIS RELEASE FROM INVOLUNTARY CIVIL COMMITMENT TO SERVE THE CSL PORTION OF HIS SENTENCE.

A-1735-22

POINT IV

DEFENDANT'S [PRO SE] MOTION FOR
RECONSIDERATION SHOULD BE CONSIDERED
ON THE MERITS.

In the absence of an evidentiary hearing, we review de novo the factual inferences drawn from the record by the PCR judge, as well as the judge's legal conclusions. State v. Harris, 181 N.J. 391, 421 (2004); see also State v. Aburoumi, 464 N.J. Super. 326, 338-39 (App. Div. 2020). We review a PCR judge's decision to deny a defendant's request for an evidentiary hearing under an abuse of discretion standard. See State v. L.G.-M., 462 N.J. Super. 357, 365 (App. Div. 2020).

A petitioner must establish entitlement to "PCR by a preponderance of the evidence." State v. O'Donnell, 435 N.J. Super. 351, 370 (App. Div. 2014). Additionally, a petitioner is not automatically entitled to an evidentiary hearing by simply raising a PCR claim. State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999).

To succeed on a claim of ineffective assistance of counsel, a defendant must satisfy both prongs of the test set forth in Strickland v. Washington, 466 U.S. 668 (1999), as adopted by State v. Fritz, 105 N.J. 42, 58 (1987), by a preponderance of the evidence. "First, the defendant must show that counsel's

9

performance was deficient." Strickland, 466 U.S. at 687. This requires demonstrating that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Ibid. The United States Constitution requires "reasonably effective assistance." Ibid. An attorney's performance will not be deemed deficient if counsel acted "within the range of competence demanded of attorneys in criminal cases." Ibid. (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). Therefore, "[w]hen a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88.

When assessing the first Strickland prong, "[j]udicial scrutiny of counsel's performance must be highly deferential," and "every effort [must] be made to eliminate the distorting effects of hindsight." Id. at 689. "Merely because a trial strategy fails does not mean that counsel was ineffective." State v. Bey, 161 N.J. 233, 251 (1999). Thus, a trial court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and "the defendant must overcome the presumption that, under the circumstances, the challenged action [by counsel] 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689 (quoting Michel v. Louisiana, 350

10

U.S. 91, 101 (1955)). Further, the court must not focus on the defendant's dissatisfaction with counsel's "exercise of judgment during the trial . . . while ignoring the totality of counsel's performance in the context of the State's evidence of [the] defendant's guilt." State v. Castagna, 187 N.J. 293, 314 (2006).

Under the second prong of the Strickland test, the defendant must show "the deficient performance prejudiced the defense." 466 U.S. at 687. This means "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Ibid. It is insufficient for the defendant to show the errors "had some conceivable effect on the outcome." Id. at 693. Ultimately, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if [it] had no effect on the judgment." Id. at 691.

## A.

Defendant argues the PCR court erred by determining his fifth PCR was procedurally barred, and that the procedural bars may be relaxed in the interest of justice and fundamental fairness. State v. Hannah, 248 N.J. 148 (2021). Defendant asserts that in Hannah, the court "clearly held that procedural bars related to a second or subsequent PCR petitions may be relaxed where the interests of justice and fundamental fairness are at stake." Defendant further

11                                                                    A-1735-22

argues "it has long been recognized that an appellate court may always correct past errors." (citing Darel v. Pennsylvania Mfrs. Ass'n Ins. Co., 114 N.J. 416, 426 (1989)). Defendant contends his fourth PCR counsel briefed several cognizable claims of ineffective assistance of trial, PCR, and appellate counsel. Because of this, defendant further asserts the PCR court "should have considered the unique circumstances surrounding defendant's PCR filings."

The State counters that a second or subsequent PCR petition should be dismissed absent defendant meeting an exception under Rule 3:22-4(b), which it contends defendant failed to do. Additionally, the State notes that timely filing of a second or subsequent PCR petition requires the petition to be filed within one year of certain specified events under Rule 3:22-12(a)(2), and the time limitations "shall not be relaxed" as provided in Rule 3:22-12(b). Furthermore, the State notes that the late filing will "not be excused in the same manner as a first PCR." State v. Jackson, 454 N.J. Super. 284, 291 (App. Div. 2018).

The State asserts defendant's fifth PCR does not meet an exception under Rule 3:22-12(a)(2)(A) because he "did not claim a newly recognized constitutional right." It notes the PCR court properly found the factual predicate for relief raised by defendant was not appropriate under Rule 3:22-12(a)(2)(B) because "there are no new facts . . . discovered by [d]efendant that are being

relied upon." Additionally, the State notes the PCR court correctly found defendant's petition untimely because it was filed one year and nine months after the prior PCR, contrary to Rule 3:22-12(a)(2)(C), and defendant could only raise ineffective assistance of counsel with his first PCR counsel because the subsequent PCRs were all denied on the papers.

The State also distinguished Hannah because Hannah filed his second PCR in late 2007, at least one year before the 2009 and 2010 amendments that now prevent the relaxation of time limits for the filing of second or subsequent PCR petitions. Hannah, 248 N.J. at 168. Also, the Hannah Court did not discuss the impact of fundamental injustice on the amended rules. Moreover, after the filing of the PCR, there was a complicated procedural history that caused numerous delays in the matter reaching the Supreme Court.

Rule 3:22-4(b) places strict limitations on second and subsequent petitions for PCR. Pursuant to Rule 3:22-4(b), a second or subsequent petition for PCR is barred unless:

> (1) it is timely under R. 3:22-12(a)(2); and
>
> (2) it alleges on its face either:
>
>> (A) that the petition relies on a new rule of constitutional law, made retroactive to defendant's petition by the United States Supreme Court or the Supreme Court of New

Jersey, that was unavailable during the pendency of any prior proceedings; or

(B)  that the factual predicate for the relief sought could not have been discovered earlier through the exercise of reasonable diligence, and the facts underlying the ground for relief, if proven and viewed in light of the evidence as a whole, would raise a reasonable probability that the relief sought would be granted; or

(C)  that the petition alleges a prima facie case of ineffective assistance of counsel that represented the defendant on the first or subsequent application for [PCR].

Rule 3:22-12(a)(2), in turn, provides:

[N]o second or subsequent petition shall be filed more than one year after the latest of:

(A) the date on which the constitutional right asserted was initially recognized by the United States Supreme Court or the Supreme Court of New Jersey, if that right has been newly recognized by either of those Courts and made retroactive by either of those Courts to cases on collateral review; or

(B) the date on which the factual predicate for the relief sought was discovered, if that factual predicate could not have been discovered earlier through the exercise of reasonable diligence; or

(C) the date of the denial of the first or subsequent application for [PCR] where

14

> ineffective assistance of counsel that represented the defendant on the first or subsequent application for [PCR] is being alleged.

The time bar imposed in these court rules may not be relaxed except as provided under Rule 3:22-12(a)(2). R. 3:22-12(b); Jackson, 454 N.J. Super. at 292-94. Rule 1:3-4(c) also specifically provides that "neither the parties nor the court" may enlarge the time specified for the filing of PCR petitions under Rule 3:22-12. Although time limitations are not completely absolute and may be waived to prevent fundamental injustice, this court must view the Rules in light of their dual purposes: "to ensure . . . the passage of time does not prejudice the State's retrial of a defendant" and "'to respect the need for achieving finality.'" State v. DiFrisco, 187 N.J. 156, 166-67 (2006) (quoting State v. Mitchell, 126 N.J. 565, 576 (1992)). Moreover, Rule 3:22-12(b) provides "[t]hese time limitations shall not be relaxed, except as provided herein." See Jackson, 454 N.J. Super. at 293; see also R. 1:3-4(c) (prohibiting the court and the parties from enlarging the time to file a petition for PCR under Rule 3:22-12).

Here, the PCR court, in a comprehensive and well-reasoned opinion, determined defendant's fifth PCR petition was both procedurally and time barred because "[t]he court does not have any ability to relax the time restrictions for second [and] subsequent PCRs" as established in Jackson, 454 N.J. Super. at

15

291.[7]  Initially, the PCR court rejected defendant's argument that because the court agreed to reconsider the fourth PCR it meant the fourth PCR was "still ongoing."  The PCR court noted, "the denial of [d]efendant's fourth petition for PCR was most certainly a 'final order' under Rule 1:7-4(b)."  The court noted it was "unable to find any established law supporting [d]efendant's contention that through the filing of a motion to reconsider, the fourth PCR was essentially left 'open.'"  It further commented, "[r]egardless . . . the motion to reconsider was untimely."

The PCR court further concluded defendant failed to satisfy Rule 3:22-12(a)(2)(B) or (C), and therefore, the fifth PCR was untimely.  It noted the claims regarding the first PCR counsel needed to be filed by 2008; 2010 as to the attorneys who assisted on the appeal and remand for the first PCR; and 2013 for the attorney who filed the second appeal concerning the first PCR.

We are likewise unpersuaded by defendant's arguments.  First, he has not asserted any newly recognized constitutional claim that was made retroactive under Rule 3:22-12(a)(2)(A).  Moreover, defendant has not demonstrated a

---

[7]  The amendments to the rules regarding time limits were adopted after defendant's judgment of conviction but provide that any PCR petition filed after the amendments is governed by the amended versions of Rules 3:22-12 and l:3-4(c).  Jackson, 454 N.J. Super at 293.

newly discovered factual predicate for the relief sought that could not have been discovered earlier through the exercise of reasonable diligence under Rule 3:22-12(a)(2)(B).  As the PCR court noted, "all the facts used by [d]efendant in support of his present motion and petition have been known to [d]efendant, were known to previous counsels, and were used in support of the first four PCRs."  Moreover, defendant's fifth PCR petition was untimely pursuant to Rule 3:22-12(a)(2)(C), as it was filed one year and nine months after the denial of the fourth PCR.

Defendant's reliance on Hannah is also misplaced.  In Hannah, the Supreme Court recognized that "our [rules] governing [PCR] petitions and proceedings do not render our courts 'powerless to correct a fundamental injustice.'"  248 N.J. at 178 (quoting State v. Nash, 212 N.J. 518, 547 (2013)).  The Court explained that "[a] fundamental injustice occurs 'when the judicial system has denied a defendant with fair proceedings leading to a just outcome.'"  Id. at 179 (quoting Nash, 212 N.J. at 546) (internal quotation marks omitted).  A fundamental injustice was found in Hannah because "critical evidence was withheld from the jury that supported [Hannah's] third-party-guilt defense."  Id. at 155.  Hannah did not overrule Jackson but rather addressed a unique circumstance involving the defendant's "fourteen-year odyssey" through the

PCR process with a complex procedural history to correct what it viewed as fundamental injustice that denied the defendant a fair trial. Id. at 155, 190.

We are satisfied defendant has not demonstrated that rare case requiring relief from the procedural limitations imposed on second or subsequent PCR petitions under Rule 3:22-12, and the facts in this case are distinguishable from Hannah. Defendant's case is far afield from the facts and "tortuous" procedural history in Hannah. Id. at 175. Moreover, Hannah dealt with a PCR petition "based on newly discovered evidence," possibly "exculpatory" or "crucial" evidence. Id. at 168, 155. Here, defendant does not present any evidence that required relaxation of the filing deadlines. The PCR court reasonably relied on Jackson in rejecting defendant's contentions that the amended rules can be interpreted with flexibility, under the facts of this case, to allow for the late PCR petition.

## B.

Notwithstanding the PCR court's determination that defendant's fifth PCR petition was not timely filed, it nevertheless addressed defendant's arguments concerning his ineffective assistance of counsel claims. Defendant argues his first PCR and appellate counsel were ineffective because they failed to request a tailored jury instruction for the witness identification charge regarding G.B.'s

voice identification of defendant as her assailant. He also argues first PCR counsel and remand PCR counsel were ineffective by failing to argue that because defendant had been threatened by police, trial counsel was ineffective when he failed to move to suppress his statements to the police. Defendant further asserts first PCR and remand PCR counsel were ineffective by failing to argue that trial counsel was ineffective by failing to move for a mistrial on the grounds of jury taint.

Here, the PCR court, in a thorough and well-reasoned forty-page written opinion, rejected defendant's substantive arguments. We affirm substantially for the reasons set forth in the PCR court's cogent opinion. We briefly add the following.

The court noted, with respect to the identification issue, that this issue was raised on the first PCR appeal and subsequently addressed at the remand hearing. Moreover, defendant did not specifically address what specific charge should have been given. Additionally, an identification charge was in fact given to the jury regarding the identification of the individual who committed the alleged offense. The jury was instructed to consider "the capacity or the ability of [G.B.] to make observations or perceptions as you ga[u]ge it to be and that you consider the opportunity which the witness had at the time and under all of the

19

circumstances . . . which she says she perceived."  We are unconvinced that defendant has demonstrated ineffective assistance of counsel on this issue or the other issues raised.

## C.

Defendant next contends the PCR court should have enforced the terms of defendant's sentence and ordered his release from involuntary civil commitment to serve the CSL portion of his sentence.  Defendant notes that although he completed the custodial term of his sentence, he has not completed the CSL term.  Defendant further argues the PCR court erred by holding that defendant's sentence for sexual assault "terminated in [2004]" because CSL is an integral part of defendant's sentence.  He further argues that under N.J.S.A. 30:4-27.28(c), the phrase "maximum term of incarceration" should be read to include the CSL portion of his sentence.

The State argues defendant "followed the appropriate channels to challenge his civil commitment and was denied release."  The State further contends the PCR court "properly ruled that it did not have the authority to 'override' [d]efendant's civil commitment."  Further, it asserts, "adopting [d]efendant's argument [would] effectively prevent[] any civil commitment

under the SVPA for [d]efendant and any other individual with a CSL component to their sentence."

The Legislature's purpose in enacting the SVPA was "to protect other members of society from the danger posed by sexually violent predators." In re Commitment of J.M.B., 197 N.J. 563, 571 (2009) (citing N.J.S.A. 30:4-27.25). Therefore, "[t]he SVPA authorizes the involuntary commitment of an individual believed to be a 'sexually violent predator' as defined by the Act. The definition of 'sexually violent predator' requires proof of past sexually violent behavior through its precondition of a 'sexually violent offense.'" In re Commitment of W.Z., 173 N.J. 109, 127 (2002) (internal citations omitted). The SVPA also requires that the person "suffer[] from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for control, care[,] and treatment." N.J.S.A. 30:4-27.26.

The SVPA provides that "[w]hen it appears that a person may meet the criteria of a sexually violent predator as defined in this act, the agency with jurisdiction shall give written notice to the Attorney General." N.J.S.A. 30:4-27.27(a). Upon notification,

> the Attorney General may initiate a court proceeding to have a person, including an inmate scheduled for

21

release upon expiration of his or her maximum term of incarceration, involuntarily committed as a sexually violent predator, "by submission to the court of two clinical certificates for a sexually violent predator, at least one of which is prepared by a psychiatrist." N.J.S.A. 30:4-27.28[(b) & (c)].

[In re Commitment of J.M.B., 197 N.J. at 571 (quoting State v. Mumin, 361 N.J. Super. 370, 382 (App. Div. 2003)).]

Here, the PCR court explained:

it is clear [d]efendant has attempted to exhaust his options for release from civil commitment with the appropriate channels ([d]efendant has both appealed the commitment in New Jersey State Courts and has challenged the constitutionality of the SVPA in the United States Federal Court system). Despite [d]efendant's request that this [c]ourt enforce the [CSL] provision of his [judgment] of conviction, and therefore "override his civil commitment," this [c]ourt simply does not have the authority to do so. Defendant is seemingly aware, from the past petitions and appeals filed following his commitment hearings, that the only way for his civil commitment to terminate, is through a showing to the appropriate courts that such commitment is no longer necessary to protect the public.

We are unpersuaded that the phrase "maximum term of incarceration" under N.J.S.A. 30:4-27.28(c) includes defendant's CSL term. Moreover, such an interpretation would defeat the purpose of the statute—protecting society from the danger posed by sexually violent predators. If the Legislature intended

22

that a defendant could not be civilly committed until the end of their CSL term, it could have so indicated.

Defendant's argument that he should not have been civilly committed—while scheduled for release upon expiration of his maximum term of incarceration—lacks merit.  Furthermore, defendant has been afforded an appropriate forum to challenge his civil commitment and has done so.  The PCR court properly determined it did not have the authority to address defendant's challenge in the context of his PCR petition.

D.

Defendant argues his motion for reconsideration should be considered on the merits.  Defendant explains the fourth PCR court denied his petition on January 22, 2019.  He claims he timely filed his pro se motion for reconsideration of the denial of his fourth PCR petition on February 6, 2019.  Additionally, defendant asserts his petition should have been considered on the merits "given the extraordinary challenge he experienced in filing briefs and exhibits while civilly committed."

The State, in turn, argues defendant's "submission is nothing more than dissatisfaction with the denial of his fourth PCR [petition] on the papers."

A-1735-22

Moreover, it was not filed until December 16, 2020—more than one year and nine months after it was due.

On appeal from a denial of a motion to reconsider, our review is limited, but the trial court's denial "will be set aside if its entry is based on a mistaken exercise of discretion." Brunt v. Bd. of Trs., Police & Firemen's Ret. Sys., 455 N.J. Super. 357, 362 (App. Div. 2018). A trial court abuses its discretion "when a decision is 'made without a rational explanation, inexplicably depart[s] from established policies, or rest[s] on an impermissible basis.'" Ibid. (quoting Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015)).

"[M]otions for reconsideration are not expressly provided for by Part III of the Rules of Court governing practice in the criminal courts." State v. Wilson, 442 N.J. Super. 224, 233 n.3 (App. Div. 2015). We apply "the standards contained in Rule 4:49-2 to such applications." Ibid. See also State v. Timmendequas, 161 N.J. 515, 554 (1999). Consequently, "[m]otions for reconsideration in criminal matters are committed to the sound discretion of the trial court and are generally intended 'to correct a court's error or oversight.'" State v. A.S.-M, 444 N.J. Super. 334, 346 (App. Div. 2016) (quoting State v. Puryear, 441 N.J. Super. 280, 294 (App. Div. 2015)). Moreover,

"[a] motion for reconsideration is meant to 'seek review of an order based on the evidence before the court on the initial motion . . . not to serve as a vehicle to introduce new evidence in order to cure an inadequacy in the motion record.'" Triffin v. SHS Grp., LLC, 466 N.J. Super. 460, 466 (App. Div. 2021) (quoting Cap. Fin. Co. of Del. Valley, Inc. v. Asterbadi, 398 N.J. Super. 299, 310 (App. Div. 2008)). Although the Rules Governing Criminal Practice do not include a rule for reconsideration, the time limitations set forth in Rule 1:7-4(b) and Rule 4:49-2 have been applied in criminal matters. See State v. Irelan, 375 N.J. Super. 100, 105 n.1 (App. Div. 2005); State v. Fitzsimmons, 286 N.J. Super. 141, 147 (App. Div. 1996). Pursuant to both Rules, a party seeking reconsideration of a final order must file a motion within twenty days of service of the order. R. 1:7-4(b); R. 4:49-2. Moreover, Rule 1:3-4(c) prohibits relaxation of the time limitation set forth in Rule 1:7-4.

[State v. Vanness, 474 N.J. Super. 609, 625-626 (App. Div. 2023).]

The PCR court, in addressing defendant's motion for reconsideration, noted:

To start, [d]efendant's motion for reconsideration of denial of his fourth PCR is time-barred. The fourth PCR was dismissed as untimely on January 22, 2019, meaning the motion for reconsideration would have needed to be filed by February 11, 2019. However, it was not filed until December 16, 2020.

Defendant's case has already been fully litigated in the New Jersey [l]aw and [a]ppellate [d]ivisions as well as in [f]ederal [d]istrict and [federal a]ppellate courts. Further, [d]efendant's extensive briefs do not

25

establish that [the fourth PCR court's] dismissal was "palpably incorrect or irrational," or failed "to consider or appreciate the significance of probative, competent evidence." Puryear, 441 N.J. Super. at 294 (quoting Palombi[ v. Palombi], 414 N.J. Super. 274, 288 (App. Div. 2010)). Upon review of the lengthy record and arguments purported by [d]efendant, reconsideration is inappropriate. [The fourth PCR court] did not overlook critical information, or misapprehend information in the record, or overlook relevant authority. See Cummings v. Bahr, 295 N.J. Super, 374, 384 (App. Div. 1996); D'Atria[ v. D'Atria], 242 N.J. Super. [392,] 401-02 [(Ch. Div. 1990).] [The fourth PCR court] dismissed the PCR as untimely and noted that it raised no new issues.

We affirm the PCR court's denial of defendant's reconsideration motion. As the PCR court correctly explains, defendant's motion for reconsideration of the denial of his fourth PCR is time-barred because it was filed one year and nine months after the denial of his fourth PCR. The PCR court did not misapply its discretion in concluding "reconsideration is inappropriate" under these circumstances. As the PCR court commented, "reconsideration should only be made in those cases that fit into a narrow category where either 1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence." D'Atria, 242 N.J. Super. at 401.

26

The PCR court correctly determined there was no reason to disturb the dismissal of defendant's fourth PCR petition.

To the extent we have not addressed any other arguments raised by defendant, we are satisfied they are without sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1735-22